UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KEVIN W. TOBIN,<br><br>      Plaintiff,<br><br>v.<br><br>LIBERTY LIFE ASSURANCE<br>COMPANY OF BOSTON and<br>LIBERTY MUTUAL<br>INSURANCE COMPANY,<br><br>      Defendants. | Civil Action No. 05 CV 11179DPW |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT
OF THEIR MOTION TO DISMISS**

Pursuant to Fed. R. Civ. P. 12(b)(6), defendants Liberty Life Assurance Company of Boston ("Liberty Life") and Liberty Mutual Insurance Company ("Liberty Mutual")(collectively the "defendants") submit this memorandum of law in support of their Motion to Dismiss the First Amended Complaint of plaintiff Kevin W. Tobin ("plaintiff" or "Tobin") for failure to state a claim upon which relief may be granted.

As addressed in detail below, Tobin's First Amended Complaint should be dismissed in its entirety for the following reasons:

a) His claim under the Employee Retirement Income Security Act ("ERISA") for recovery of benefits and his common law breach of contract claim are barred by *res judicata*;

b) Tobin's common law breach of contract claim is preempted by ERISA;

c) Tobin's ERISA claim for recovery of benefits should be dismissed because it is untimely;

d) Tobin's claim that defendants failed to provide him with a copy of certain ERISA plan documents should be dismissed because Liberty Life is not the Plan administrator under ERISA, and therefore not required to provide such documents, and Liberty Mutual, the Plan administrator under ERISA, provided Tobin with those Plan documents to which he was entitled under ERISA within the 30-day statutory period; and

e) Defendant Liberty Life is not a proper defendant in this case.

## PROCEDURAL BACKGROUND

On June 7, 2005, Tobin filed suit against the defendants seeking "Recovery of Benefits, Pursuant to 29 U.S.C. §1132(a)(1)(B), ERISA" (Count I) and alleging "Failure to Provide [an ERISA] Plan" (Count II) and breach of contract (Count III). On June 14, 2005, Tobin filed his First Amended Complaint "solely to add the exhibits omitted from the original filing."

Tobin's claims arise from his employment with and discharge from Liberty Mutual on January 10, 2001. After his discharge from Liberty Mutual, Tobin sued Liberty Mutual alleging claims for age and disability discrimination and/or retaliation under state and federal law, as well as common law claims for "wrongful termination" and breach of the implied covenant of good faith and fair dealing. See Tobin v. Liberty Mutual Ins. Co., C.A. No. 01 CV 11979 DPW, 2004 WL 1922133 (D. Mass. August 30, 2004)("Tobin I").[1] Between November 21, 2001, and February 4, 2002, Tobin was granted leave to amend his Complaint in Tobin I two times. On October 1, 2003, Liberty Mutual filed its motion for summary judgment.

On August 21, 2003, Tobin filed suit against three Liberty Mutual employees, Robert Nadeau ("Nadeau"), Kevin Vance ("Vance"), and Manina Schwitters ("Schwitters")(collectively

---

[1] Defendants refer herein to Tobin v. Liberty Life, et al., C.A. No. 05 CV 11179DPW as "Tobin III."

the "Tobin II defendants"),[2] in the Massachusetts Superior Court, alleging intentional infliction of emotional distress, negligent infliction of emotional distress, and intentional interference with contractual relations. See Tobin v. Nadeau, et al., C.A. No. 03 CV 11817 DPW, 2004 WL 1922134 (D. Mass. August 30, 2004)("Tobin II"). The Tobin II defendants removed the case to this Court based on ERISA. On October 10, 2003, the Tobin II defendants moved to dismiss Tobin's claims for failure to state a claim upon which relief may be granted. On October 17, 2003, Tobin moved to remand Tobin II back to state court.

On August 30, 2004, this Court granted Liberty Mutual's motion for summary judgment in Tobin I. This Court found that Tobin had not provided any evidence in support of his age discrimination/retaliation and wrongful termination claims. Tobin I, 2004 WL 1922133, at *5. With respect to Tobin's disability discrimination claim, this Court found that Tobin had failed to put into dispute the fact that he had consistently failed to adequately perform the functions of his job and that Tobin's poor performance, not discrimination, was the basis for his termination. Id. at *8. Finally, this Court granted summary judgment as to Tobin's failure to accommodate claim because Tobin failed to show that any of the accommodations he sought were tied to his disability. Id. at *10. Tobin appealed the grant of summary judgment in Tobin I. That appeal is currently under advisement in the Court of Appeals (argued April 7, 2005).

Similarly, this Court also denied Tobin's motion to remand Tobin II to state court and granted the Tobin II defendants' motion to dismiss on August 30, 2004. Denying remand, this Court found that Tobin's claims sought to use state law as an alternative mechanism to the enforcement scheme set out in ERISA despite the fact that Tobin's claims fell squarely within

---

[2] Tobin deposed each of the Tobin II defendants in Tobin I. Tobin deposed Schwitters on November 2, 2002 and June 3, 2003; Vance on May 27, and June 19, 2003; and Nadeau on June 24, 2003.

3

ERISA's enforcement provisions. Tobin II, 2004 WL 1922134, at *5. Therefore, this Court found that Tobin's state law claims were preempted by ERISA and denied Tobin's motion for remand. This Court then granted the Tobin II defendants' motion to dismiss based on its finding that all of the state law claims were preempted by ERISA. Id. Tobin did not appeal the dismissal of his claims in Tobin II.

## FACTS[3]

From May 1968 until January 2001, Tobin was employed by Liberty Mutual as a Sales Representative (Am. Comp., ¶¶ 9 - 10, 20). In December 1997, Tobin took a short term disability leave. (Id. at ¶ 11). Tobin returned from his first disability leave in June 1998 and resumed his regular duties. (Id. at ¶ 12). In September 1998, Tobin took a second short term disability leave. (Id. at ¶ 13). Tobin returned from his second disability leave in January 1999. (Id. at ¶ 14).

In December 2000, Tobin met with his supervisor and informed her that his physician believed he should take a third disability leave. (Id. at ¶ 15). Based upon the encouragement of his supervisor, Tobin delayed taking further action to advance a third disability claim. (Id. at ¶¶ 16 - 17). Tobin met with his supervisor again on January 10, 2001 and reiterated to her that his disability leave should be processed because he was unable to function on the job. Tobin's supervisor, however, represented that he should try for a further period to do his job. (Id. at 18 - 19). On January 10, 2001, Tobin was discharged.[4] Upon learning of his discharge, Tobin told a

---

[3] Tobin's allegations are undisputed solely for the purposes of this motion.

[4] Despite the fact that the First Amended Complaint in Tobin III states that Tobin was discharged "on or about January 11, 2001," (Am. Comp., ¶ 20), Tobin's termination date was January 10, 2001. Tobin asserted as much in his previous Complaints. See Tobin I, Second Amended Complaint, ¶¶ 7, 57; Tobin II, Complaint, ¶ 111.

4

Liberty Mutual Human Resource Representative that he was disabled and requested to take a disability leave. (Id. at ¶ 21). The Human Resource Representative informed Tobin that he was not eligible for disability benefits because he was no longer a Liberty Mutual employee. (Id. at ¶ 22). Tobin, believing the Human Resource Representative's statement regarding Tobin's ineligibility for disability leave, "did not take any further immediate action to advance the claim for disability benefits." (Id. at ¶ 23). Tobin later pursued his administrative remedies and was told that his claim was denied because it was not advanced prior to termination. (Id. at ¶ 25).

A comparison of the Tobin II and Tobin III Complaints[5] reveals that they both arise from the same operative set of facts, namely Tobin's discharge and the circumstances surrounding the denial of short term disability benefits to him. Both Complaints:

- allege that Tobin took two leaves of absence as a result of his disability (compare Tobin II, ¶¶ 64, 82, with Tobin III, ¶¶ 11, 13);

- allege that during a December 20, 2000 meeting, Tobin informed his supervisor that he intended to take a third disability leave if his performance was not satisfactory (compare Tobin II, ¶¶ 102 -103, with Tobin III, ¶ 15)

- allege that Tobin's supervisor gave him encouragement and positive feedback, which deterred him from taking another disability leave (compare Tobin II, ¶¶ 101 - 110, with Tobin III, ¶¶ 16 - 19);

- allege that during a second January 2001 meeting, Tobin's supervisor encouraged

---

Tobin's new assertion of a January 11, 2001 termination date is also contradicted by his own deposition testimony in Tobin I, an excerpt of which is attached as Exhibit B to the *First Amended Complaint* in Tobin III. See Deposition Transcript of Kevin W. Tobin, pg. 741. Indeed, in the excerpted portion of his deposition testimony, Tobin discusses the January 10, 2001 meeting with his supervisor (Schwitters) and the Human Resource Representative (Vance) during which he was terminated. Tobin further testified that following his termination he requested to go on disability leave and was informed by Vance that he was ineligible because he was no longer a Liberty employee. See Deposition of Kevin W. Tobin, pp. 741 - 744, Am. Comp., Ex. B.

[5] Indeed, the Complaints in Tobin I, Tobin II and Tobin III all arise out of essentially the same operative facts and circumstances. Compare, e.g., Tobin I, *Second Am. Comp.*, ¶¶ 51 - 56, Tobin II, ¶¶ 101 - 110, and Tobin III, ¶¶ 15 – 19, all alleging that Tobin's supervisor, Schwitters, gave Tobin positive feedback about his performance and discouraged him from taking a third disability leave prior to his discharge. These allegations are at the heart of Tobin's Complaints.

5

him to continue to work rather than file a third disability claim (compare Tobin II, ¶¶ 108 - 109, with Tobin III, ¶¶ 18 - 19); and

- allege that upon being notified that he was terminated, Tobin requested a disability leave but was informed that he was no longer eligible for disability benefits because he was no longer a Liberty Mutual employee (compare Tobin II, ¶ 112 - 113, with Tobin III, ¶ 21 - 22).

The only significant differences between Tobin II and Tobin III are the identities of the named defendants and the legal labels Tobin has given to his claims.

## ARGUMENT

**I.    THE STANDARD UNDER FED. R. CIV. P. 12(b)(6).**

Under Fed. R. Civ. P. 12(b)(6), the Court must accept as true all well-pleaded facts alleged in Tobin's First Amended Complaint and must draw all reasonable inferences in favor of Tobin. Washington Legal Found. v. Mass. Bar Found., 993 F.2d 962, 971 (1st Cir. 1993). However, the plaintiff must "set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988). Conclusory allegations should not be credited, nor can conclusory allegations substitute for facts necessary to state a claim. The Dartmouth Review v. Dartmouth Coll., 889 F.2d 13, 16 (1st Cir. 1989). Tobin's claims fail under these standards.

**II.   TOBIN'S RECOVERY OF BENEFITS CLAIM UNDER ERISA (COUNT I) AND HIS BREACH OF CONTRACT CLAIM (COUNT III) ARE BARRED BY THE DOCTRINE OF *RES JUDICATA*.**

Tobin's claims for denial of disability benefits should be dismissed based on the doctrine of *res judicata* as a result of the dismissal of his similar claims in Tobin II. "The policy behind *res judicata* is to relieve parties of the cost and vexation of multiple lawsuits, conserve judicial

resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." Apparel Art International, Inc. v. Amertex Enters. Ltd., 48 F.3d 576, 583 (1st Cir. 1995). Under *res judicata*, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action. Allen v. McCurry, 449 U.S. 90, 94 (1980); Kale v. Combined In. Co. of America, 924 F.2d 1161, 1165 (1st Cir. 1991). The doctrine of *res judicata* applies when there is (1) a final judgment on the merits of the earlier action; (2) an identity of the causes of action in both the earlier and later suits; (3) an identity of parties or privies in the two suits. Mass. School of Law at Andover, Inc. v. Amer. Bar Assoc., 142 F.3d 26, 37 (1st Cir. 1998); Kale, 924 F.2d at 1165. All of the requisite elements exist to support the dismissal of Tobin III on *res judicata* grounds.

First, it is beyond dispute that there has been a judgment on the merits in Tobin II. This Court granted the Tobin II defendants' motion to dismiss and dismissed all of the claims in Tobin II with prejudice[6] on August 30, 2004. It is well established that a dismissal for failure to state a claim operates as a decision on the merits with *res judicata* effect. See Kale, 924 F.3d at 1164; Karvelas., 360 F.3d at 241 (dismissal pursuant to Fed. R. Civ. P. 12(b)(6) is a judgment on the merits).

Second, there is no question that there is an identity of the "cause of action" asserted in Tobin II and Tobin III. The First Circuit has adopted a transactional approach to determine whether causes of action are sufficiently related to support a *res judicata* defense. Mass. School of Law, 142 F.3d at 38. Thus, "a cause of action is defined as a set of facts which can be

---

[6] A dismissal for failure to state a claim is presumed to be with prejudice unless explicitly stated otherwise in the order. See Moore's Fed. Prac., § 12.34[6][a] (3d ed. 1997); U.S. ex rel. Karvelas v. Melrose-Wakefield Hosp., 360 F.3d 220, 241 (1st Cir. 2004)(dismissal for failure to state a claim presumed to be with prejudice and has a claim preclusive effect).

7

characterized as a single transaction or series of related transactions," i.e., "whether the causes of action arise out of a common nucleus of operative facts." Id.  Here, there can be no doubt that both Tobin II and Tobin III allege claims arising out of the circumstances surrounding the denial of disability benefits to Tobin. "No new facts or series of events have been added to the mixture. As a result there is an identity of the cause of action as defined by federal *res judicata*." Andrews-Clarke v. Lucent Tech., Inc., 157 F.Supp.2d 93, 102 - 103 (D. Mass. 2001).

Finally, although the parties in Tobin II and Tobin III are not identical, defendant Liberty Mutual[7] in Tobin III is in privity with the Tobin II defendants.  The individuals through whom Liberty Mutual acted in Tobin III to allegedly effect the circumstances that led to the denial of disability benefits to Tobin, Tobin's Supervisor (Schwitters) and the Liberty "Human Resource Representative" (Vance), were both defendants in Tobin II.  Courts have held that an employer's supervisory employees are in privity with their employer for *res judicata* purposes. Connaughton v. New England Tel. & Telegraph, 1988 WL 34321, at *3 (D. Mass. March 18, 1988); Talano v. Bonow, 2002 WL 31061198, at *4 (N.D. Ill. September 16, 2002)(holding that *res judicata* principles barred employee's claims against his supervisor for tortious interference; supervisor was in privity with employer sued in prior action); see also, Fiumara v. Fireman's Fund Ins. Companies, 746 F.2d 87, 92 (1st Cir. 1984)(suit against agent was barred by *res judicata* where the principal has been adjudged not liable); Gosselin v. Field, Hurley, Webb & Sullivan, 188 F. Supp. 2d 107, 109 (D. Mass. 2002)(explaining how *res judicata* principles protect parties in privity with a successful defendant in an earlier suit).

As this Court stated in Tobin II, "the core of Tobin's claims is that defendants acted to get

---

[7] As discussed below in section VI, Liberty Life is not a proper defendant to an ERISA action and therefore all claims as to Liberty Life should be dismissed.

8

him fired before he could file a disability claim." Tobin II, 2004 WL 1922134, at * 5. Tobin's current claims are no different. Tobin could have and should have brought his ERISA claims, at a minimum, in Tobin II.[8] As discussed above, Tobin alleged all of the same operative facts in both Tobin II and Tobin III. When the Tobin II defendants moved to dismiss Tobin's claim based on preemption, Tobin was on notice that his claims were preempted by ERISA but he did not seek to amend his complaint to state a viable ERISA claim or dismiss "without prejudice." Under these circumstances, the dismissal of the Tobin II claims on preemption grounds now precludes Tobin from asserting ERISA claims that should have been brought in Tobin II. Numerous courts have barred ERISA claims in a later suit on the basis of *res judicata* where there was a dismissal based on ERISA preemption in an earlier suit. See, e.g., Daley v. Marriott International, Inc., --- F.3d --- , 2005 WL 1712420, *4 (8th Cir. July 25, 2005)(later ERISA claim based on the same nucleus of operative facts barred by *res judicata* where prior claims were dismissed based on ERISA preemption); Selkridge v. United of Omaha Life Ins., 360 F.3d 155, 172 (3rd Cir. 2004)(court "had no choice but to dismiss" second suit based on ERISA where ERISA claims could have been brought in plaintiff's initial suit which was dismissed on preemption grounds); Stewart v. U.S. Bancorp, 297 F.3d 953, 959 (9th Cir. 2002)(same); Godley

---

[8] The summary judgment issued for Liberty Mutual against Tobin in Tobin I also provides a basis to dismiss Tobin's current claims on the basis of his impermissible claim-splitting. The allegations in Tobin I and Tobin III all arise out of the same nucleus of operative facts. Tobin I, while alleging disability discrimination claims, makes similar allegations regarding Tobin's supervisor providing him with positive feedback and discouraging him from taking a third disability leave prior to his discharge, which is the crux of the allegations in Tobin III. Compare Tobin I, *Second Am. Comp.*, ¶¶ 51 - 56, with Tobin III, ¶¶ 15 - 19. Tobin should have amended his Complaint in Tobin I to assert his ERISA claims. He did not. Rather, he has again engaged in impermissible claim-splitting which undermines the principles of *res judicata*. See Kale, 924 F.2d at 1165 (to avoid the onus of claim-splitting a plaintiff must bring all related claims in the same lawsuit). As such, Tobin's current claims should be dismissed because of his failure to bring all of his related claims in Tobin I. While the Tobin II defendants also moved to dismiss Tobin II on the basis of *res judicata* and Tobin's impermissible claims splitting, the Court did not address those grounds in granting the Tobin II defendants' motion to dismiss.

v. Ameritech Corp., 173 F.3d 855 (6th Cir. 1999)(table decision)(same); Andrews-Clarke, 157 F. Supp. 2d 93, 100 (D. Mass. 2001)(same). The result here should be no different and Tobin's claims should be dismissed on the basis of *res judicata*.

### III. TOBIN'S BREACH OF CONTRACT CLAIM (COUNT III) IS PREEMPTED BY ERISA.[9]

ERISA contains a broad preemption provision that is uniformly recognized as "the most sweeping federal preemption statute ever enacted by Congress." Sejman v. Warner-Lambert Co., 845 F.2d 66, 68 (4th Cir. 1988). The preemption provision declares that ERISA shall "supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan...." 29 U.S.C. §1144(a) (emphasis added). "ERISA preemption analysis thus requires courts to ask 1) whether the plan at issue is an 'employee benefit plan', and 2) whether the cause of action 'relates to' the employee benefit plan." Williams v. HealthAlliance Hosp., Inc., 135 F. Supp. 2d 106, 109 (D. Mass. 2001)(citing McMahon v. Digital Equip. Corp., 162 F.3d 28, 36 (1st Cir. 1998)). Tobin's breach of contract claim is preempted under this test and should be dismissed. Indeed, Tobin's breach of contract claim is no different from the state law claims that were dismissed based on ERISA preemption in Tobin II.

A. Liberty Mutual's Short Term Disability Plan is an Employee Benefit Plan Governed by ERISA.

The ERISA statutes, codified at 29 U.S.C. §§ 1001, et seq., provide exclusive regulation of employee benefit plans. ERISA applies to any "employee benefit plan" if it is established or maintained by an employer or employee organization engaged in commerce, or in any industry or

---

[9] In conjunction with their motion to dismiss, defendants have also filed a motion to strike Tobin's jury claim on the basis that individuals asserting ERISA claims are not entitled to a jury trial. See, e.g., Dudley Supermarket, Inc. v. Transamerica Life Ins. and Ann. Co., 188 F. Supp. 2d 23 (D. Mass. 2002)("clear weight of authority holds that no right to a jury trial attaches to ERISA actions").

activity affecting commerce. 29 U.S.C. § 1003. An "employee benefit plan" is defined as either an employee welfare benefit plan or an employee pension benefit plan. 29 U.S.C. § 1002(3). A benefit plan that is established or maintained by an employer for its employees is a "welfare benefit plan" within the meaning of ERISA if it provides its "participants or their beneficiaries, through the purchase of insurance or otherwise, ... benefits in the event of sickness, accident, [or] disability." 29 U.S.C. § 1002(1)(emphasis added). Liberty Mutual's Short Term Disability Plan states that "the purpose of the Plan is to provide to Participants short-term disability benefits" and that it is intended to meet all applicable requirements of ERISA. See Liberty Mutual's Short Term Disability Plan (the "Plan"), § 1.2, attached as Exhibit 1 to the Affidavit of Richard E. Bowman ("Bowman Aff."), filed herewith.[10] Thus, ERISA applies to Liberty Mutual's short-term disability plan.

      B.     Tobin's Breach of Contract claim unquestionably "relates to an" ERISA plan.

The Supreme Court has given the phrase "relate to" "its broadest common-sense meaning such that a state law 'relates to' a benefit plan . . . 'if it has a connection with or reference to such a plan.'" Metropolitan Life Ins. Co. v. Massachusetts, 471 U.S. 724, 739 (1985)(quoting Shaw v. Delta Airlines, 463 U.S. 85, 97 (1983)). In Ingersoll-Rand Co. v. McClendon, 498 U.S. 133 (1990), the Supreme Court identified two tests for determining whether a cause of action "relates

---

[10] In considering a motion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), a court may consider documents specifically referenced in the plaintiff's complaint without converting the motion to one for summary judgment. See Shaw v. Digital Equip. Corp., 82 F.3d 1194, 1220 (1st Cir. 1996); Beddall v. State St. Bank & Trust Co., 137 F.3d 12, 17 (1st Cir. 1998)(when a complaint's factual allegations are expressly linked to and admittedly depend on a document, that document effectively merges into the pleadings and the court may consider it in deciding a motion to dismiss under Rule 12(b)(6)); see also Ed Miniat, Inc. v. Globe Life Ins. Group, Inc., 805 F.2d 732, 739 n. 12 (7th Cir. 1986)(on Rule 12 motion, court may consider ERISA plan document submitted by defendant with motion to dismiss when plan is referenced in complaint but not attached as exhibit to complaint). Here, Tobin specifically references the Plan in his First Amended Complaint. See Am. Comp., ¶¶ 4, 24, 36 - 37, 40. Thus, this Court may properly consider documents concerning the Plan in deciding defendants' Motion to Dismiss. Shaw, 82 F.3d at 1220; Beddall, 137 F.3d at 17; Ed Miniat, 805 F.2d at 739 n. 12.

to" an employee benefit plan and is, thus, preempted by ERISA. First, a law is expressly preempted by ERISA where a plaintiff, in order to prevail, must plead, and the court must find, that an ERISA plan exists. Id. at 140. The cause of action "relates to" an ERISA plan in this context because the court's inquiry must be directed to the plan. Id. Second, even where there is no express preemption, a cause of action is preempted if it conflicts directly with an ERISA cause of action. Id. at 142.

Tobin's breach of contract claim is preempted because in order to prevail on his claim, he was required to, and did, direct the Court's inquiry to the Plan. See Am. Comp., ¶ 40. Tobin's breach of contract claim states that "the defendant was contractually obligated to provide short-term disability benefits to Tobin *pursuant to the terms of the defendant's short term disability plan*" and that "defendant breached said contract by denying benefits." Id. at ¶¶ 40 - 41 (emphasis added). It is difficult to imagine a more blatant admission that a claim relates to an employee benefit plan than where the plaintiff's allegations specifically stated that they are made "pursuant to" that plan. Indeed, claims to recover benefits from an ERISA plan fall directly under §502(a)(1)(B) which provides the exclusive remedy for such causes of action. Cogan v. Phoenix Life Ins. Co., 310 F. 3d 238, 242 (1st Cir. 2002). Additionally, state law claims, such as Tobin's contract claim, that would require the Court to calculate damages using the terms of an ERISA plan are preempted by ERISA. See Hampers v. W.R. Grace & Co., Inc., 202 F.3d 44, 52 (1st Cir. 2000)(breach of contract claim preempted by ERISA); Harris v. Harvard Pilgrim Health Care, Inc., 208 F.3d 274, 281 (1st Cir. 2000)(same).

Courts have uniformly held that ERISA preempts breach of contract claims such as the one Tobin has brought in this case. See, e.g., Cogan, 310 F. 3d at 242; Harris, 208 F.3d at 281;

Hampers, 202 F.3d at 52; McMahon, 162 F.3d at 36 (contract claim for benefits under short-term disability plan preempted by ERISA); Turner v. Fallon Comm. Health Plan, Inc., 127 F.3d 196, 199 (1st Cir. 1997). Thus, Tobin's breach of contract claim is completely preempted by ERISA and should be dismissed.

IV.  **TOBIN'S ERISA RECOVERY OF BENEFITS CLAIM (COUNT I) AND HIS BREACH OF CONTRACT CLAIM (COUNT III) SHOULD BE DISMISSED AS UNTIMELY.**

Statutes of limitation serve several important policies, including rapid resolution of disputes, repose for those against whom a claim could be brought, and avoidance of litigation involving lost evidence or distorted testimony of witnesses. See, e.g., Wilson v. Garcia, 471 U.S. 261, 271 (1985). For these reasons, statutes of limitation "are not to be disregarded by courts out of a vague sympathy for particular litigants." Baldwin County Welcome Ctr. v. Brown, 466 U.S. 147, 152 (1984). Strict adherence to limitation periods "is the best guarantee of evenhanded administration of the law." Mohasco Corp. v. Silver, 447 U.S. 807, 826 (1980). The First Circuit has stated that "[g]ranting a motion to dismiss based on a limitations defense is entirely appropriate when the pleader's allegations leave no doubt that an asserted claim is time-barred." LaChapelle v. Berkshire Life Ins. Co., 142 F.3d 507, 509 (1st Cir.1998). Tobin's failure to file his benefits claim in a timely manner necessitates its dismissal.

A.  Tobin Failed to File His Claims within the Applicable Limitations Period.

ERISA itself does not impose a statute of limitations for the bringing of a claim for benefits. Rather, a claim for benefits is generally governed by the statute of limitations prescribed for contract actions in the state in which the claim is brought. See Alcorn v. Raytheon Co., 175 F. Supp. 2d 117, 120 (D. Mass. 2001); Laurenzano v. Blue Cross and Blue Shield of

13

Massachusetts Inc. Retirement Income Trust, 134 F. Supp. 2d 189, 205 - 207 (D. Mass. 2001). The ERISA Plan itself, however, may contain a shorter limitations period if it is reasonable. Alcorn, 175 F. Supp. 2d at 121 (applying three year limitation period contained within ERISA plan); I.V. Services of Am. v. Inn Development & Management Co., 7 F. Supp. 2d 79, 86 (D. Mass. 1998)(barring claim that fell outside of three year limitations period within ERISA plan).

The Summary Plan Description for the Plan specifically established a limitations period, stating that a participant or his legal representative cannot start a legal action "more than one year after the time proof of claim is required." See the Summary Plan Description for the Liberty Mutual Short Term Disability Plan[11] ("SPD"), p. D-1-13 (Bowman Aff., Exhibit 2); see also Plan, § 5.3 (Bowman Aff., Ex. 1)(reiterating limitations period). Under the terms of the Plan, Tobin was required to submit his proof of claim no more than 90 days after his date of disability.[12] See SPD, pp. D-1-8, D-1-11 (Bowman Aff., Ex. 2)(stating that benefits will be forfeited unless the claim for disability is reported within 90 days of the beneficiary's initial date of disability). A failure to file his disability benefits claim within 90 days of his date of disability would constitute a failure to exhaust his administrative remedies  Thus, under the terms of the Plan, Tobin was obligated to file his legal action for denial of benefits no later than one year and 90 days after his claim accrued.

Ordinarily, a cause of action under ERISA does not accrue until there has been a denial of

---

[11] The SPD is specifically incorporated by reference into the Plan. See Plan, § 1.3, Appendix B (Bowman Aff., Ex. 1).

[12] A failure to file his disability benefits claim within 90 days of his date of disability would constitute a failure to exhaust his administrative remedies. See Section IV.B., infra.; see also Terry v. Bayer Corp., 145 F.3d 28, 35 (1st Cir. 1998)(requirement that plaintiff exhaust his administrative remedies before bringing suit includes requirement that plan participants follow internal plan procedures in a timely manner); Gallegos v. Mt. Sinai Med. Ctr., 210 F.3d 803, 808 (7th Cir. 2000)(same).

benefits. Thomas v. Eastman Kodak Co., 183 F.3d 38, 51 - 52 (1st Cir. 1999); Cotrill v. Sparrow, Johnson, & Ursillo, 100 F.3d 220, 223 (1st Cir. 1996). The denial of benefits, however, need not be formal, so long as the denial was clear. An ERISA beneficiary's claim may accrue, before a formal denial of benefits or even before there has been an application for benefits, where there has been a clear repudiation of benefits that was known or should have been known by the beneficiary. See, e.g., Carey v. Int'l Brotherhood of Electrical Workers Local 363 Pension Plan, 201 F.3d 44, 47 - 48 (2nd Cir. 1999)(plaintiff's ERISA claim accrued upon being informed he was not eligible for benefits, four years before he filed a benefit claim with the plan); Union Pac. R.R. Co. v. Beckham, 138 F.3d 325, 331 - 332 (8th Cir. 1998)(claim accrued when plaintiff became aware he would not receive benefits despite having not yet filed applications for benefits); McLaughlin v. Unum Life Ins. Co. of Am., 224 F. Supp. 2d 283, 288 (D. Me. 2002); Laurenzano, 134 F. Supp. 2d at 209.

  Here, Tobin's First Amended Complaint clearly states that "on or about January 11, 2001," a Liberty Mutual Human Resource Representative advised him "that he was not eligible for disability benefits because his employment had just been terminated." Am. Comp., ¶ 21 - 22. Tobin further asserts that he "believed that this representation was true." Id. at ¶ 23. As such, based upon the allegations of Tobin's First Amended Complaint, the accrual date for any legal action based on Tobin's claim for ERISA benefits was January 11, 2001. As set forth above, based on the Plan's limitations period, Tobin was required to file any court claim, at the latest, within one year and 90 days of his accrual date, or by April 11, 2002. Tobin, however, did not file this action until June 7, 2005, more than three years after the limitation period had run out. As such, Tobin's ERISA claim is clearly time-barred and must be dismissed.

B. <u>Tobin Failed to Exhaust his Administrative Remedies by Not Making a Timely Application for Disability Benefits</u>.

If, despite the clear and unequivocal allegations of his First Amended Complaint, Tobin claims that his benefits claim was not asserted until 2004, after which time his benefits claim was again denied (<u>see</u> Exhibits A and C to the Amended Complaint), Tobin's claim for benefits must be dismissed because he failed to exhaust his administrative remedies under the Plan.

Under ERISA, a participant in an employee benefit plan may bring a civil action "to recover benefits due him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. §1132(a)(1)(B). Tobin's claim should be dismissed, however, because Tobin failed to comply with the terms of the Plan regarding the timely filing of benefits claims. As discussed above, the Plan specifically requires that a Plan beneficiary submit his proof of claim within 90 days of his date of disability or his right to benefits will be forfeited. <u>See</u> Section IV.A., <u>supra</u>; <u>see also</u> SPD, p. D-1-8, D-1-11 (Bowman Aff., Ex. 2). Assuming, for purposes of this motion only, that Tobin's date of disability was January 11, 2001, the first date after Tobin's final day of work, Tobin's proof of claim would have been required to be submitted within 90 days, or no later than April 11, 2001. If, however, Tobin failed to submit his proof of claim until 2004,[13] more than two years after his date of disability, his claim for disability benefits is barred for failure to

---

[13] Tobin's First Amended Complaint states, without providing the Court with any date, that he "later pursued his administrative remedies and was subsequently advised that his claim was denied because it was not properly advanced prior to his termination." Am. Comp., ¶ 25. Liberty Mutual's computerized records show that Tobin's claim was filed with Liberty Mutual on January 23, 2004. <u>See</u> Printout of claims processing computer screen (Bowman Aff., Ex. 3). To the extent Tobin will try to characterize his pursuit of his "administrative remedies" as his actual request for benefits, such a request fails under the terms of the Plan, which required him to pursue his initial benefit claim within 90 days of his disability date and further required him to appeal any denial of his claim within 60 days. <u>See</u> Plan § 5.1 (Bowman Aff., Ex, 1); SPD, p. D-1-13 (Bowman Aff., Ex. 2).

exhaust his administrative remedies under the terms of the Plan. See, e.g., Terry, 145 F.3d at 35; Gallegos, 210 F.3d at 808.

V.      **TOBIN'S "FAILURE TO PROVIDE PLAN" CLAIM SHOULD BE DISMISSED BECAUSE LIBERTY MUTUAL PROVIDED TOBIN WITH A COPY OF THE PLAN DOCUMENTS IN A TIMELY MANNER.**

Tobin's claim for defendants' alleged failure to provide a copy of the ERISA Plan documents following Tobin's request for those documents should be dismissed because Liberty Life was not the Plan "administrator" under ERISA and therefore not required to provide the Plan documents, and, in any event, Liberty Mutual, the Plan administrator under ERISA, provided Tobin with the Plan documents to which he was entitled within 30 days of Tobin's written request, as required by statute. ERISA contains specific sections requiring plan administrators to provide participants with certain plan information. See 29 U.S.C. §1132(c). Under Section 1132(c), a plan administrator is required to provide plan documents within 30 days of a written request for such documents. Id. Liability under Section 1132(c), however, is limited to plan "administrators" who fail to provide participants with plan documents within the required 30-day timeframe. See, e.g., Kobold v. AETNA U.S. Healthcare, 258 F. Supp. 2d 1317, 1324 (M.D. Fla. 2003)(only plan administrator had a duty to provide information under §1132(c)). A plan "administrator" is specifically defined under ERISA as follows: "the person specifically so designated by the terms of the instrument under which the Plan is operated." 29 U.S.C. § 1002(16)(A). In the case of Liberty Mutual's Short Term Disability Plan, Liberty Mutual is the Plan "administrator." See Plan, § 1.3, defining "Plan Administrator."

Tobin's claim that he was not provided with Plan documents within the statutorily required 30 days is apparently based upon his counsel's May 13, 2005 letter to Liberty Life

17

requesting the Plan documents. Am. Comp., ¶ 36, Ex. D. Liberty Life, however, was not the Plan administrator as defined in the Plan and had no obligation to provide Tobin with Plan documents. See Vanderklok v. Provident Life and Accident Ins., Co., 956 F.2d 610, 618 (6th Cir. 1992)(§1132(c) claim dismissed where defendant was not a plan administrator and had no duty to provide plan documents); Kobold, 258 F. Supp. 2d at 1324 (same). Indeed, on May 18, 2005, Liberty Life informed Tobin's counsel that his request for a copy of the Plan documents had been directed to the wrong party and informed him where to properly direct his request.[14] Am. Comp. ¶ 37, Ex. E.

When Tobin finally requested Plan documents from the Plan administrator, its response was timely. Tobin's counsel did not request Plan documents from the Plan administrator, Liberty Mutual, until June 6, 2005, when he sent a letter to Liberty Mutual's Benefits Department as he had been directed to do by Liberty Life. See June 6, 2005 letter from Frank J. Frisoli to Liberty Mutual Insurance Company, Attn: Benefits Department (Bowman Aff., Ex. 6).[15] In response to the request from Tobin's counsel on June 6, 2005, Liberty Mutual sent Tobin's counsel all of the Plan documents he requested on July 1, 2005, twenty-fine days after the request. See July 1, 2005 letter from Sharon Crowley to Frank J. Frisoli (Bowman Aff., Ex. 7). Thus, Liberty Mutual

---

[14] Liberty Life's May 18, 2005 letter specifically informs Tobin that it only provided administrative services for Liberty Mutual. A Plan "administrator" must be specifically named as such within the Plan. See 29 U.S.C. § 1002(16)(A); see also Terry, 145 F.3d at 35 (provider of administrative services for the Plan is not liable under ERISA). Despite having been informed that his request to Liberty Life for Plan documents had been misdirected, Tobin's counsel again requested Plan documents from the Appeals Review Consultant at Liberty Life on May 20, 2005. See May 20, 2005 letter from Frank J. Frisoli to Dawn-Elynn Tillinghast, Appeals Review Consultant (Bowman Aff., Ex. 4). On June 2, 2005, Liberty Life again informed Tobin's counsel that his request for Plan documents had been misdirected and instructed him to contact Liberty Mutual to obtain the Plan documents. See June 2, 2005 letter from Dawn-Elynn Tillinghast to Frank J. Frisoli (Bowman Aff., Ex. 5).

[15] Tobin's claim for failure to provide Plan documents is premised upon his request for such documents. See Am. Comp., ¶ 36, "plaintiff through his attorney requested the summary plan for the benefits of the plaintiff." Since Tobin's claim for failing to provide Plan documents is linked to and depends upon both Tobin's request for such Plan documents and Liberty Mutual's response, this Court may consider the letters regarding that request and

provided Tobin with the Plan documents he was entitled to under ERISA within 30 days of his request. Therefore, Count II, alleging a failure to provide the Plan, should be dismissed.

### VI.      LIBERTY LIFE IS NOT A PROPER ERISA DEFENDANT.

The only proper defendants in an ERISA action are the Plan itself, in this case the Liberty Mutual Short Term Disability Plan, or the Plan's fiduciaries. Terry, 145 F.3d at 35. More specifically, "the proper party in an action concerning ERISA benefits is the party that controls the administration of the plan." Id. at 36. Liberty Mutual is explicitly named in the Plan as the Plan "administrator" and controls the administration of the Plan. See Plan, §§ 1.3, 7.1-7.2, 7.6 (Bowman Aff., Ex. 1); SPD, p. D-1-15 (Bowman Aff., Ex. 2). As Plan administrator, Liberty Mutual has retained discretion over disputes concerning the Plan. See Plan, § 7.1 - 7.2(a). By contrast, Liberty Life merely provides administrative services for the Plan and Liberty Mutual. See Am. Comp., Ex. D (letter from Liberty Life to Frank J. Frisoli). The First Circuit has specifically stated that service providers which merely process claims are not amenable to suit under ERISA, 29 U.S.C. §1132(a)(1)(B). See Terry, 145 F.3d at 36. Thus, Tobin's claims against Liberty Life should be dismissed.

---

Liberty Mutual's response without converting this motion into one for summary judgment. See fn. 10, supra.

## CONCLUSION

For the above reasons, the defendants respectfully request that this Court dismiss the First Amended Complaint of plaintiff Kevin W. Tobin.

Respectfully submitted,

LIBERTY LIFE ASSURANCE
COMPANY OF BOSTON and
LIBERTY MUTUAL
INSURANCE COMPANY,

By their attorneys,

_____
Alan D. Rose (BBO#427280)
Richard E. Bowman (BBO# 645245)
ROSE & ASSOCIATES
29 Commonwealth Avenue
Boston, MA 02116
Tel: 617-536-0040
Fax: 617-536-4400

Date: August 15, 2005

### CERTIFICATE OF SERVICE

I hereby certify that on this day a true copy of the above document was served upon the attorney of record for each party by mail/by hand.

Date: 8/15/05    _____