UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KEVIN W. TOBIN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 05 CV 11179DPW |
| ) | |
| LIBERTY LIFE ASSURANCE ) | |
| COMPANY OF BOSTON and ) | |
| LIBERTY MUTUAL ) | |
| INSURANCE COMPANY, ) | |
| ) | |
| Defendants. ) | |

## AFFIDAVIT OF RICHARD E. BOWMAN

I, Richard E. Bowman, do hereby on oath depose and state as follows:

1.      I am an attorney admitted to practice in the Commonwealth of Massachusetts and before this Court.  I am an associate with the law firm of Rose & Associates, located at 29 Commonwealth Avenue, Boston, Massachusetts.

2.      Rose & Associates is counsel to defendants Liberty Mutual Insurance Company ("Liberty Mutual") and Liberty Life Assurance Company of Boston ("Liberty Life")(collectively "defendants") in this action brought by plaintiff Kevin W. Tobin.  I provide this affidavit to submit to the Court documents which were referenced in the plaintiff's First Amended Complaint or in one instance (Exhibit 3) sets forth the date of an event that was referenced in the First Amended Complaint but was undated.  The defendants rely on these documents in support of their Motion to Dismiss.

3.      Attached hereto as Exhibit 1 is a true and accurate copy of the Liberty Mutual Short Term Disability Plan (the "Plan") upon which Tobin specifically bases his claims for

denial of benefits and which was referenced in the First Amended Complaint at ¶¶ 4, 24, 36 - 37, 40.

4.     Attached hereto as Exhibit 2 is a true and accurate copy of the Summary Plan Description ("SPD") for the Liberty Mutual Short Term Disability Plan upon which Tobin specifically bases his claims for denial of benefits. The SPD is incorporated by reference into the Plan, which was referenced in the First Amended Complaint at ¶¶ 4, 24, 36 - 37, 40.

5.     Attached hereto as Exhibit 3 is a true and accurate copy of a printout of claims processing computer screen which sets out the "Claim Received Date" for Tobin's claim for disability benefits. This screen shows the date on which Tobin "pursued his administrative remedies" as set forth in an undated allegation in ¶ 25 of the First Amended Complaint.

6.     Attached hereto as Exhibit 4 is a true and accurate copy of a May 20, 2005 letter from Frank J. Frisoli to Dawn-Elynn Tillinghast, Appeals Review Consultant, requesting Plan documents from Liberty Life. Tobin's claim for "Failure to Provide Plan" (Count III) is based upon Tobin's written request for the Plan documents. Tobin's written request for the Plan documents was referenced in the First Amended Complaint at ¶ 36.

7.     Attached hereto as Exhibit 5 is a true and accurate copy of a June 2, 2005 letter from Dawn-Elynn Tillinghast, Liberty Life, to Frank J. Frisoli informing Tobin's counsel where to properly direct his request for Plan documents. Tobin's claim for "Failure to Provide Plan" (Count III) is based on defendants' response to Tobin's request for Plan documents. The defendants' response to Tobin's written request for the Plan documents was referenced in the First Amended Complaint at ¶ 37.

8.     Attached hereto as Exhibit 6 is a true and accurate copy of a June 6, 2005 letter from Frank J. Frisoli to Liberty Mutual Insurance Company, Attn: Benefits Department

requesting Plan documents from the Plan Administrator, Liberty Mutual. Tobin's claim for "Failure to Provide Plan" (Count III) is based upon Tobin's written request for the Plan documents. Tobin's written request for the Plan documents was referenced in the First Amended Complaint at ¶ 36.

9. Attached hereto as Exhibit 7 is a true and accurate copy of a July 1, 2005 letter from Sharon Crowley, Liberty Mutual, to Frank J. Frisoli responding to Tobin's request for Plan documents. Tobin's claim for "Failure to Provide Plan" (Count III) is based on defendants' response to Tobin's request for Plan documents. The defendants' response to Tobin's written request for the Plan documents was referenced in the First Amended Complaint at ¶ 37.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS 12TH DAY OF AUGUST, 2005.

_____
Richard E. Bowman

**CERTIFICATE OF SERVICE**

I hereby certify that on this day a true copy of the above document was served upon the attorney of record for each party by mail/by hand.

Date: 8/15/05 _____

3

**EXHIBIT 1**

## LIBERTY MUTUAL INSURANCE COMPANY
## AMENDMENT TO
## LIBERTY MUTUAL SHORT TERM DISABILITY PLAN

WHEREAS, the Board of Directors of Liberty Mutual Insurance Company passed a resolution on September 10, 2003 which: (a) authorized an amendment of the Liberty Mutual Short Term Disability Plan ("Plan") so that, except as noted below, all references to "Liberty Mutual Insurance Company" would become references to "Liberty Mutual Group Inc.", (b) upon acceptance by Liberty Mutual Group Inc., transfers sponsorship of the Plan from Liberty Mutual Insurance Company to Liberty Mutual Group Inc., including the responsibility to fund the Plan, and (c) adopted the Plan as a Participating Employer;

WHEREAS, the Board of Directors of Liberty Mutual Group Inc. passed a resolution on September 10, 2003 which: (a) accepted the transfer of sponsorship of the Plan, (b) adopted the Plan as amended, (c) assumed all liabilities with respect to the Plan, (d) approved Liberty Mutual Insurance Company as a Participating Employer in the Plan, and (e) appointed Liberty Mutual Insurance Company as Plan Administrator;

NOW THEREFORE, effective as of September 24, 2003, the Plan is amended as follows:

1.    Section 1.1 is amended in its entirety to read as follows:

*Section 1.1    The Plan*

Liberty Mutual Insurance Company established the Liberty Mutual Short Term Disability Plan (the "Plan") effective January 1, 1992. The Plan was amended and restated as of January 1, 2001.

On September 10, 2003, the respective Boards of Directors of Liberty Mutual Insurance Company and Liberty Mutual Group Inc. passed resolutions effecting a transfer in the sponsorship of the Plan from Liberty Mutual Insurance Company to Liberty Mutual Group Inc., so that effective September 24, 2003, Liberty Mutual Group Inc. became the Plan Sponsor, and Liberty Mutual Insurance Company became a Participating Employer in the Plan and the Plan Administrator. In addition, in connection with such transfer, Liberty Mutual Group Inc. assumed all liabilities with respect to the Plan.

2.    Section 1.3(b) is amended in its entirety to read as follows:

(b)    "Company" means Liberty Mutual Group Inc. In the event of the reorganization, merger or similar transaction affecting the Company, any successor entity may adopt the Plan for the benefit of employees of such successor, in which event the Plan shall continue without any gap or lapse in coverage.

3.    Section 1.3(l) is amended in its entirety to read as follows:

(l)    "Plan Administrator" means Liberty Mutual Insurance Company.

4.      Section 3.1 is amended in its entirety to read as follows:

*Section 3.1        Funding*

Notwithstanding anything to the contrary contained herein, participation in the Plan by a Participant and the payment of Plan benefits attributable to Company contributions shall be conditioned on such Participant contributing to the Plan at such time and in such amounts as the Plan Administrator shall establish from time to time ("Participant Contribution").    The Plan Administrator may require that any Participant Contributions be made by payroll deduction.  Nothing herein requires the Company, an Employer, or the Plan Administrator to contribute to or under the Plan, or to maintain any fund or segregate any amount for the benefit of any Participant, except to the extent specifically required under the terms of the SPD attached hereto in Appendix B.  No Participant shall have any right to, or interest in, the assets of the Company or any Employer.

Benefits for this Plan are unfunded and paid from the general assets of the Company.

5.      Article 6 is amended in its entirety to read as follows:

## ARTICLE VI.  AMENDMENT AND TERMINATION

*Section 6.1        Right to Amend*

The Company or the Company's parent or ultimate parent company, through their respective boards of directors or a committee of one of those boards, shall have the right to make at any time any amendment or modification to the Plan; but in no event shall any such amendment or modification prejudice any claim or benefit under the Plan which was incurred but not paid prior to the date of the amendment or modification.   The Company or the Company's parent or ultimate parent company, through their respective boards of directors or a committee of one of those boards, may delegate to the Chief Executive Officer of the Company the authority to make any plan amendment required to bring the Plan into conformity with law or regulation.

*Section 6.2        Right to Terminate.*

The Company or the Company's parent or ultimate parent company, through their respective boards of directors or a committee of one of those boards, shall have the right at any time to terminate the Plan in whole or in part; but in no event shall such termination prejudice any claim or benefit under the Plan which was incurred but not paid prior to the termination date.

6.    Section 7.1 is amended in its entirety to read as follows:

*Section 7.1    Plan Administrator*

Liberty Mutual Insurance Company shall be the "Plan Administrator." The Plan Administrator shall have overall responsibility for the administration of this Plan and any decisions made in accordance herewith shall be final and conclusive on all Employees. The Company may change or modify this responsibility in its sole discretion. All usual and reasonable expenses of the Plan Administrator may be paid in whole or in part by the Company and any expenses not paid by the Company shall not be the responsibility of the Plan Administrator.

7.    Section 7.6 is amended its entirety to read as follows:

*Section 7.6    Named Fiduciaries*

The following persons or entities are named as fiduciaries under the Plan:

The Company - The Company, acting through its Board of Directors, a committee thereof, or a delegee of either, has chosen the Plan Administrator to be responsible for all fiduciary functions under the Plan, unless the function is explicitly delegated to another named fiduciary. The Plan Administrator has the authority, in its sole discretion, to construe the terms of this Plan and decide all questions of eligibility, determine the amount, time and manner of payment of any benefits, and decide any other matters relating to the administration or operation of the Plan. Any such interpretations or decisions of the Plan Administrator shall be conclusive and binding.

Any person or group of persons may serve in more than one fiduciary capacity with respect to the Plan. Any named fiduciary hereunder may, by resolution of its board of directors or pursuant to such formal procedures as it shall establish, designate persons (including third-party administrators) other than the named fiduciaries to carry out the fiduciary responsibilities under the Plan.

IN WITNESS WHEREOF, Liberty Mutual Insurance Company has caused this Amendment to be executed by its duly authorized officer effective the __24th__ day of September 2003.

LIBERTY MUTUAL INSURANCE COMPANY

By: _____

Christopher C. Mansfield
Senior Vice President and General Counsel


ACCEPTED AND AGREED TO:

LIBERTY MUTUAL GROUP INC.

By: _____

Christopher C. Mansfield
Vice President and General Counsel

# LIBERTY MUTUAL
# SHORT-TERM DISABILITY PLAN

Amended and Restated as of January 1, 2001

**Liberty Mutual Insurance Company**

# LIBERTY MUTUAL SHORT-TERM DISABILITY PLAN

## Table of Contents

ARTICLE I.  PREAMBLE ........................................................................................1

Section 1.1 The Plan. ..........................................................................................1

Section 1.2 Purpose and Intent...........................................................................1

Section 1.3 Definitions........................................................................................1

Section 1.4 Interpretation....................................................................................2

ARTICLE II.  ELIGIBILITY AND PARTICIPATION ...................................................3

Section 2.1 Eligibility. ........................................................................................3

Section 2.2 Enrollment........................................................................................3

Section 2.3 Termination of Participation. ...........................................................3

ARTICLE III.  FUNDING..........................................................................................3

Section 3.1 Funding. ...........................................................................................3

ARTICLE IV.  BENEFITS ........................................................................................4

Section 4.1 Benefits. ...........................................................................................4

ARTICLE V.  CLAIMS ............................................................................................4

Section 5.1 Claims Procedure.............................................................................4

Section 5.2 Exhaustion of Administrative Remedies. .........................................6

Section 5.3 Action for Recovery.........................................................................5

Section 5.4 Participant's Responsibilities...........................................................5

ARTICLE VI.  AMENDMENT AND TERMINATION.....................................................6

Section 6.1 Right to Amend.................................................................................6

Section 6.2 Right to Terminate. ..........................................................................6

ARTICLE VII.  ADMINISTRATION AND FIDUCIARY PROVISIONS ...........................6

Section 7.1 Plan Administrator............................................................................6

Section 7.2 Powers and Duties of the Plan Administrator...................................7

Section 7.3 Outside Assistance and Payment of Expenses..................................8

Section 7.4 Delegation of Powers........................................................................8

Section 7.5 Indemnification of Fiduciaries and Plan Administrator.....................8

Section 7.6 Named Fiduciaries. ...........................................................................8

Section 7.7 Complete and Separate Allocation of Fiduciary Responsibilities. ...............................9

Section 7.8 Disclaimer of Liability. ...............................................................................................9

**ARTICLE VIII.  EMPLOYERS** ...................................................................................................10

Section 8.1 Adoption of Plan. .......................................................................................................10

Section 8.2 Administration. ...........................................................................................................11

Section 8.3 Termination of Participation. ......................................................................................9

**ARTICLE IX.  MISCELLANEOUS** ............................................................................................10

Section 9.1 Exclusive Benefit. ......................................................................................................10

Section 9.2 Non-Alienation of Benefits. .......................................................................................10

Section 9.3 Limitation of Rights. ...................................................................................................11

Section 9.4  Governing Laws and Jurisdiction and Venue. ..........................................................10

Section 9.5 Severability. ...............................................................................................................10

Section 9.6 Construction. ..............................................................................................................10

Section 9.7 Expenses. ...................................................................................................................11

Section 9.8  Entire Plan. ...............................................................................................................12

Section 9.9 Other Law ..................................................................................................................12

**APPENDIX A** ..............................................................................................................................12

**APPENDIX B** ..............................................................................................................................13

# LIBERTY MUTUAL
# SHORT-TERM DISABILITY PLAN

## ARTICLE I.  PREAMBLE

### Section 1.1     The Plan.

Liberty Mutual Insurance Company (the "Company") established the Liberty Mutual Short-Term Disability Plan (the "Plan") effective January 1, 1992.  The Plan is hereby amended and restated as of January 1, 2001.

### Section 1.2     Purpose and Intent.

The purpose of the Plan is to provide to Participants short-term disability benefits.

The Plan is intended to meet all applicable requirements of the Internal Revenue Code ("Code") and the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), as well as rulings and regulations issued or promulgated thereunder.  Nothing in the Plan shall be construed as requiring compliance with Code or ERISA provisions that do not otherwise apply.

### Section 1.3     Definitions.

The following terms, where capitalized, shall have the meanings set forth below unless otherwise specified herein:

(a)     "Code" means the Internal Revenue Code of 1986, as amended.

(b)     "Company" means Liberty Mutual Insurance Company, a mutual insurance company organized under the laws of Massachusetts.  In the event of the reorganization, merger or similar transaction affecting the Company, any successor entity may adopt the Plan for the benefit of employees of such successor, in which event, the Plan shall continue without any gap or lapse in coverage.

(c)     "Effective Date" of the Plan as amended and restated is January 1, 2001.

(d)     "Employee" means any individual employed on the U.S. payroll by the Company, or by subsidiaries of the Company that participate in the Plan, on a regular full time basis, or regular part-time basis (if scheduled and regularly working 20 hours or more per week).  Individuals classified as independent contractors or leased employees are not eligible for coverage, even if they are later reclassified as common law employees for tax purposes.

(e)     "Employer" means the Company, and subsidiaries of the Company that

1

participate in the Plan. The Company shall have the right to terminate any Employer's adoption of the Plan at any time. If an Employer merges or is otherwise consolidated with any affiliate, the successor shall, as to the group of Employees covered by the Plan immediately before such merger or consolidation, be the Employer as defined hereunder, unless the Company specifies to the contrary. In case of any other merger or consolidation, the successor shall not be the Employer except to the extent that it acts to adopt the Plan. Each Employer is identified in Appendix A. The Company shall amend Appendix A as needed, to reflect an Employer's adoption of the Plan or withdrawal from the Plan, without any need to otherwise amend the Plan.

(f)    "ERISA" means the Employee Retirement Income Security Act of 1974, as amended.

(g)    "Participant" means an Employee who meets the requirements for eligibility as set forth in Article II and who properly enrolls in the Plan.

(h)    "Participant Contribution" means the pre-tax or after-tax contribution required to be paid by a Participant, if any, as determined under the SPD, as may be amended from time to time, and which is attached hereto in Appendix B. The term "Participant Contribution" includes contributions used to purchase insurance contracts or policies.

(j)    "Plan" means the Liberty Mutual Short-Term Disability Plan, which consists of this document and the SPD incorporated hereunder by reference, as may be amended from time to time, and which is attached hereto as Appendix B.

(k)    "Plan Administrator" means the Company.

(l)    "Plan Year" means each twelve (12) consecutive month period commencing January 1 and ending on December 31.

(m)   "SPD" means any summary plan description, as may be amended from time to time, summary of material modifications, or other employee communication, which describes the benefits under the Plan, and which has been included by the Employer as part of this Plan under Appendix B.

## Section 1.4    Interpretation.

The Plan shall consist of the articles and appendices of this Plan document and the SPD, as may be amended from time to time, and which is attached hereto as Appendix B. If, as to any provisions of the SPD, the articles of this Plan document provide explicitly to the contrary, the provisions of this Plan document shall control. If there is a conflict between the provisions of any

2

of the articles of this Plan document and the SPD, and such conflict involves a provision required by ERISA or the Code, the provision required by ERISA or the Code shall control. The terms of this Plan document may not enlarge the rights of a Participant to benefits available under the Plan.

## ARTICLE II. ELIGIBILITY AND PARTICIPATION

*Section 2.1      Eligibility.*

An Employee shall be eligible to participate in the Plan as provided under the terms of the SPD, as may be amended from time to time, and which is attached hereto as Appendix B.

*Section 2.2      Enrollment.*

The Plan Administrator may establish procedures in accordance with the SPD, as may be amended from time to time, for the enrollment of Employees under the Plan. The Plan Administrator may prescribe enrollment forms that must be completed by a prescribed deadline prior to commencement of coverage under the Plan.

*Section 2.3      Termination of Participation.*

A Participant will cease being a Participant in the Plan and coverage under this Plan for the Participant and shall terminate in accordance with the provisions of the SPD, as may be amended from time to time, and which is attached hereto as Appendix B.

## ARTICLE III. FUNDING

*Section 3.1      Funding.*

Notwithstanding anything to the contrary contained herein, participation in the Plan by a Participant and the payment of Plan benefits attributable to Company or Employer contributions shall be conditioned on such Participant contributing to the Plan at such time and in such amounts as the Plan Administrator shall establish from time to time ("Participant Contribution"). The Plan Administrator may require that any Participant Contributions be made by payroll deduction. Nothing herein requires the Company, an Employer, or the Plan Administrator to contribute to or under the Plan, or to maintain any fund or segregate any amount for the benefit of any Participant, except to the extent specifically required under the terms of the SPD attached hereto in Appendix B. No Participant shall have any right to, or interest in, the assets of the Company or any Employer.

Benefits for this Plan are unfunded and paid from the general assets of the Company.

# ARTICLE IV.  BENEFITS

*Section 4.1      Benefits.*

Benefits will be paid solely under the terms of, and in the form and amount specified in, the SPD, as may be amended from time to time, and which is attached hereto as Appendix B.

# ARTICLE V.  CLAIMS

*Section 5.1      Claims Procedure.*

(a)    Except as provided in Subsection (b), a claim for benefits shall be submitted to the claims administrator under the terms of the SPD, as may be amended from time to time, and which is attached hereto as Appendix B. A claim shall not be treated as having been filed until all information necessary to process the claim is submitted. In the event that a claim, as originally submitted, is not complete, the claims administrator shall notify the claimant and the claimant shall then have the responsibility for providing the missing information. If all information necessary to process a claim is not submitted by the applicable claim filing deadline, the claim shall automatically be deemed to be denied.

(b)    In the event that (i) the SPD does not prescribe a claims procedure for benefits that satisfies the requirements of Section 503 of ERISA, the claims procedure described below shall apply.

(1)    A claim shall be filed in writing and decided within ninety (90) days by the claims administrator unless special circumstances require an extension of up to ninety (90) additional days. Written notice of the decision on such claim shall be furnished promptly to the claimant and shall be written in a manner calculated to be understood by the claimant. If the claim is wholly or partially denied, such written notice shall:

(A)    set forth an explanation of the specific findings and conclusions on which such denial is based, making reference to the pertinent provisions of the Plan documents;

(B)    describe any additional information or material needed to support the claim and explain why such information or material, if any, is necessary; and

(C)    describe the claims review procedures in subsections (2) and (3).

(2)    In the event a claim for benefits is denied, or if the claimant has had no response to such claim within ninety (90) days of its submission (in which

case the claim for benefits shall be deemed to have been denied) the claimant or his duly authorized representative may request a review by the Plan Administrator of such decision denying the claim.

(A)    Any such request must be filed in writing within sixty (60) days after receipt by the claimant of written notice of the decision or the date such claim is deemed to be denied. Such written request for review shall contain all additional information which the claimant wishes to be considered.

(B)    In pursuing this review, the claimant or his duly authorized representative:

(i)      must request in writing a review of the denial;

(ii)     may review pertinent documents; and

(iii)    may submit issues and comments in writing.

(3)    Written notice of the decision on review shall be furnished to the claimant within sixty (60) days (unless special circumstances require an extension of up to sixty (60) additional days) following the receipt of the request for review. The written notice of the decision shall include specific reasons for the decision and shall refer to the pertinent provisions of the Plan on which the decision is based. If the decision on review is not furnished within the time specified above, the claim shall be deemed to be denied on review.

## Section 5.2    _Exhaustion of Administrative Remedies._

No action at law or in equity may be brought to recover under this Plan until all administrative remedies have been exhausted. If a claimant fails to file a timely claim or, if a claim is denied, fails to request a review in accordance with the procedures outlined herein, such claimant shall have no rights of review and shall have no right to bring any action in any court. The denial of the claim shall become final and binding on all persons for all purposes.

## Section 5.3    _Action for Recovery._

No action at law or in equity may be brought for recovery under this Plan until the date on which the Participant has exhausted all appeal rights, nor more than one year after the time written proof of claim is required to be furnished.

## Section 5.4    _Participant's Responsibilities._

Each Participant shall be responsible for providing the Plan Administrator and/or the Company with the Participant's current address. Any notices required or permitted to be given hereunder

shall be deemed given if directed to such address and mailed by regular United States mail. Neither the Plan Administrator nor the Company shall have any obligation or duty to locate a Participant.

## ARTICLE VI.  AMENDMENT AND TERMINATION

### Section 6.1    *Right to Amend.*

The Board of Directors of the Company, a committee thereof, or a delegee of either, shall have the right to make at any time any amendment or modification to the Plan; but in no event shall any such amendment or modification prejudice any claim or benefit under the Plan which was incurred but not paid prior to the date of the amendment or modification. The Board of Directors has delegated to the Chief Executive Officer of the Company the authority to make any plan amendment required to bring the Plan into conformity with law or regulation.

### Section 6.2    *Right to Terminate.*

The Board of Directors of the Company, a committee thereof, or a delegee of either, shall have the right at any time to terminate the Plan in whole or in part; but in no event shall such termination prejudice any claim or benefit under the Plan which was incurred but not paid prior to the termination date.

## ARTICLE VII.  ADMINISTRATION AND FIDUCIARY PROVISIONS

### Section 7.1    *Plan Administrator.*

The Company shall be the "Plan Administrator." The Plan Administrator shall have overall responsibility for the administration of this Plan and any decisions made in accordance herewith shall be final and conclusive on all Employees. The Company may change or modify this responsibility in its sole discretion. All usual and reasonable expenses of the Plan Administrator may be paid in whole or in part by the Company and any expenses not paid by the Company shall not be the responsibility of the Plan Administrator.

### Section 7.2    *Powers and Duties of the Plan Administrator.*

The Plan Administrator, and its designees as it relates to functions designated by the Plan Administrator, shall have such duties and powers as may be necessary to discharge its duties hereunder, including, but not by way of limitation, the following:

    (a)      to have complete and final discretionary authority to construe and interpret the Plan, control over the operation and administration of the Plan, including interpretation of all Plan documents, decisions concerning all questions of eligibility to participate

and the determination of the amount, manner and time of payment of any benefits hereunder. Without limitation, such decisions by the Plan Administrator and its designees as to the determination of all related or non-related questions and matters that arise under the Plan shall be final and conclusive, and there shall be no *de novo* review of any such decisions by any court. Any review of such decisions shall be limited to determining whether the decisions were so arbitrary and capricious as to be an abuse of discretion;

(b)    to have control over the operation and procedures of the Plan, including prescribing procedures to be followed by Participants filing claims for benefits;

(c)    to prepare and distribute, in such manner as the Plan Administrator and its designees determine to be appropriate, information explaining the Plan;

(d)    to receive from the Employer and from Participants such information as shall be necessary for the proper administration of the Plan;

(e)    to furnish the Employer, upon request, such annual reports with respect to the administration of the Plan as are reasonable and appropriate;

(f)    to receive, review and keep on file (as it deems necessary) reports of benefit payments by the Employer and reports of disbursements for expenses directed by the Plan Administrator;

(g)    to exercise such authority and responsibility as it deems appropriate in order to comply with the terms of the Plan relating to the records of the Participants and the balances which are payable under this Plan; and

(h)    to appoint individuals to assist in the administration of the Plan and any other agents it deems advisable, including legal counsel, consultants and actuaries.

The Plan Administrator and its designees may rely upon any reasonable direction, or information from a Participant relating to such Participant's entitlement to benefits hereunder as being proper under this Plan, and are not required under this Plan to inquire into the propriety of any such direction or information. It is intended under this Plan that the Plan Administrator and its designees shall be responsible for the proper exercise of their own powers, duties, responsibilities and obligations under this Plan and shall not be responsible for any act or failure to act of the Employer. Neither the Plan Administrator nor the Employer make any guarantee to any Participant in any manner for any loss or other event because of the Participant's participation in this Plan.

*Section 7.3    Outside Assistance and Payment of Expenses.*

(a)    Outside Assistance: The Plan Administrator may employ such counsel, accountants, claims administrators, consultants, actuaries and other person or persons as it shall deem advisable.

(b)    Payment of Expenses:  The Plan Administrator has the right to pay any Plan expenses out of existing Plan funds which in the Plan Administrator's discretion are allowable expenses under ERISA.

### Section 7.4    *Delegation of Powers.*

In accordance with the provisions hereof, the Plan Administrator has been delegated certain administrative functions relating to the Plan with all powers necessary to enable it properly to carry out such duties.

### Section 7.5    *Indemnification of NonCorporate Fiduciaries and Plan Administrator.*

In case the Plan Administrator or noncorporate fiduciaries of the Plan who are affiliated with the Company or an Employer as a director or officer of the Company or an Employer are involved in litigation related to the Plan, or a judgment is rendered against such parties, the Company, acting through its Board of Directors, a committee thereof, or a delegee of either, shall indemnify the Plan Administrator or such noncorporate fiduciaries who are affiliated with the Company or an Employer as a director or officer of the Company or an Employer for any action taken in good faith in the administration of the Plan or in compliance with the requirements of the Plan.

### Section 7.6    *Named Fiduciaries.*

The following persons or entities are named as fiduciaries under the Plan:

(a)    The Company - The Company, acting through its Board of Directors, a committee thereof, or a delegee of either, has chosen the Plan Administrator to be responsible for all fiduciary functions under the Plan, unless the function is explicitly delegated to another named fiduciary. The Plan Administrator has the authority, in its sole discretion, to construe the terms of this Plan and decide all questions of eligibility, determine the amount, time and manner of payment of any benefits and decide any other matters relating to the administration or operation of the Plan. Any such interpretations or decisions of the Plan Administrator shall be conclusive and binding.

(b)    Other Named Fiduciaries:

    (1)    The Employer, or Employers, acting through their board of directors, shall be responsible for the funding of the Plan; provided, that the Plan's funding policy and method shall be determined by the Company.

            Any person or group of persons may serve in more than one fiduciary capacity with respect to the Plan. Any named fiduciary hereunder may, by resolution of its board of directors or pursuant to such formal procedures as it shall establish, designate persons (including third-party administrators) other than the named fiduciaries to carry out the fiduciary responsibilities under the Plan.

*Section 7.7      Complete and Separate Allocation of Fiduciary Responsibilities.*

It is intended that this Article VII shall allocate to each named fiduciary the individual responsibility for the prudent execution of the functions assigned to each named fiduciary. The performance of such responsibilities shall be deemed a several assignment and not a joint assignment. None of such responsibilities nor any other responsibility is intended to be shared by two (2) or more of such fiduciaries, unless such sharing shall be provided by a specific provision of the Plan or any agreement of trust. Whenever one named fiduciary is required by the Plan to follow the directions of another, the two shall not be deemed to have been assigned a shared responsibility, but the responsibility of the one giving the direction shall be deemed to be its sole responsibility, and the responsibility of the one receiving such direction shall be to follow it insofar as such direction is on its face proper under the Plan and applicable law.

*Section 7.8      Disclaimer of Liability.*

Except as otherwise provided under sections 404 through 409 of ERISA, neither the Board of Directors of the Company, the Employer, the board of directors of the Employer, the trustee (if any), the Plan Administrator, nor any person designated to carry out fiduciary responsibilities pursuant to this Plan shall be liable for any act, or failure to act, which is made in good faith pursuant to the provisions of the Plan.

## ARTICLE VIII. EMPLOYERS

*Section 8.1      Adoption of Plan.*

This Plan may be adopted by an Employer, provided that such adoption is with the approval of the Company. Such adoption shall be by resolution of the Employer's governing body, a copy of which shall be filed with the Company.

*Section 8.2      Administration.*

As a condition to adopting the Plan, and except as otherwise provided herein, each Employer shall be deemed to have authorized the Plan Administrator to act for it in all matters arising under or with respect to the Plan and shall comply with such other terms and conditions as may be imposed by the Plan Administrator.

*Section 8.3      Termination of Participation.*

Each Employer may cease to participate in the Plan with respect to its Employees or Former Employees by resolution of its governing body, provided the Employer is authorized to do so by the Company, by formal written resolutions of the Company's Board of Directors (or the person, entity or group of persons appointed by the Board of Directors by action taken in accordance with its authority).

## ARTICLE IX.  MISCELLANEOUS

*Section 9.1      Exclusive Benefit.*

This Plan has been established for the exclusive benefit of Participants and except as otherwise provided herein, all contributions under the Plan may be used only for such purpose.

*Section 9.2      Non-Alienation of Benefits.*

No benefit, right or interest of any Participant under the Plan shall be subject to anticipation, alienation, sale, transfer, assignment, pledge, encumbrance or charge, seizure, attachment or legal, equitable or other process, or be liable for, or subject to, the debts, liabilities or other obligations of such person, except as otherwise required by law or, in the case of assignments, as permitted under the terms of the Plan. The Employer shall not be in any manner liable for or subject to the debts, contracts, liabilities, engagements or torts of any Participant entitled to benefits hereunder.

*Section 9.3      Limitation of Rights.*

Neither the establishment nor the existence of the Plan, nor any modification thereof, shall operate or be construed so as to:

(a)    give any person any legal or equitable right against the Plan (including any assets of the Plan) the Company or an Employer, except as expressly provided herein or required by law; or

(b)    create a contract of employment with any Employee, obligate the Company or an Employer to continue the service of any Employee, or affect or modify the terms of an Employee's employment in any way, including the right of the Company or an Employer to discharge any Employee, with or without cause.

*Section 9.4      Governing Laws.*

The Plan shall be construed and enforced according to the laws of the state of Massachusetts, to the extent not preempted by Federal law that shall otherwise control.

*Section 9.5      Severability.*

If any provision of the Plan is held invalid or unenforceable, its invalidity or unenforceability shall not affect any other provision of the Plan, and the Plan shall be construed and enforced as if such invalid or unenforceable provision had not been included herein.

*Section 9.6      Construction.*

The captions contained herein are inserted only as a matter of convenience and for reference, and in no way define, limit, enlarge or describe the scope or intent of the Plan, nor in any way shall affect

the Plan or the construction of any provision thereof. Any terms expressed in the singular form shall be construed as though they also include the plural, where applicable, and references to the masculine, feminine, and the neuter are interchangeable.

*Section 9.7    Expenses.*

Any expenses incurred in the administration of the Plan shall be paid by the Plan, by the Company and/or by one or more Employers, according to the Company's determination.

*Section 9.8    Entire Plan.*

This document constitutes the entire Plan and there are no oral items or conditions to the contrary. Any change, modification or amendment to the Plan must be in writing.

*Section 9.9    Other Law*

The Plan shall comply with all other state and federal law to the extent not preempted by ERISA and to the extent such laws require compliance by the Plan.

IN WITNESS WHEREOF, the Company has caused this Plan to be effective January 1, 2001, except as otherwise stated herein, to be executed by its duly authorized officer.

LIBERTY MUTUAL INSURANCE COMPANY

By: *Helen ER Sayles*

Title: *SVP - HR & Administration*

11

# LIBERTY MUTUAL SHORT-TERM DISABILITY PLAN

## APPENDIX A

In addition to **Liberty Mutual Insurance Company,** the following Employers have adopted the Plan pursuant to Section 8.1:

Colorado Casualty Insurance Company
Golden Eagle Insurance Corporation
Helmsman Management Services, Inc.
Liberty Insurance Holdings, Inc.
Liberty International Agency, Inc.
Liberty Mutual Fire Insurance Company
Liberty Life Assurance Company of Boston
Liberty Northwest Insurance Corporation
National Insurance Association
Summit Consulting, Inc.
The Netherlands Insurance Company
Wausau Service Corporation
Workwell Health & Safety, Inc.

# LIBERTY MUTUAL SHORT-TERM DISABILITY PLAN

## APPENDIX B

The following documents shall form a part of the Plan pursuant to Section 1.3 herein:

- Summary Plan Description for the Liberty Mutual Short-Term Disability Plan.

**EXHIBIT 2**

1/2001

## D-1

## SHORT-TERM DISABILITY PLAN

### Overview

The Short-Term Disability (STD) Plan is designed to continue all or part of your pay when a disability due to illness or accident keeps you away from work for more than seven consecutive (7) calendar days and for up to 25 weeks.

### Eligibility

Regular full-time employees on the U.S. payroll become eligible for coverage on the first day of employment. Regular part-time employees (if scheduled and regularly working 20 hours or more per week) on the U.S. payroll become eligible on January 1, 1999 or the first day of employment, whichever is later. Individuals classified as independent contractors or leased employees are not eligible for coverage, even if they are later reclassified as common law employees for tax purposes.

### Cost

Employee contributions are not required. Short-Term Disability benefits are fully funded by the Plan Sponsor.

### Definitions

**"Accidental Injury"** or **"Injury"** means bodily impairment resulting directly from an accident.

**"Mental Illness"** means mental, nervous or emotional diseases or disorders of any type, including, but not limited to alcoholism or drug abuse or drug addiction.

**"Plan Sponsor"** means Liberty Mutual Insurance Company, and with respect to employees employed by U.S. subsidiaries of Liberty Mutual Insurance Company which are participating companies under the Plan, the respective subsidiary company.

**"Sickness"** means illness, disease, pregnancy or complications of pregnancy.

**"Total disability"** or **"Totally disabled"** with respect to a covered employee means the inability to perform all the material and substantial duties of his or her regular occupation on a full-time basis because of injury or sickness.

### Short-Term Disability Benefits

Short-Term Disability benefits begin on the eighth consecutive calendar day of disability, provided that you

1/2001

have been certified by a fully licensed physician to be totally disabled. If your total disability is not certified by a physician, benefits are not payable.

1/2001

For full-time employees, Flexible Time Off (FTO) or Personal Holidays or Company Holidays are used to continue your pay during the first five work days of your disability (your "waiting period"). If you do not have enough FTO or Personal Holidays to cover the waiting period in its entirety, you will only receive pay for the number of FTO or Personal Holidays you have accrued or Company Holidays, if applicable. You must use time accrued to cover the waiting period.

For part-time employees, the first five work days of your disability (your "waiting period") will be covered by 20 hours of FTO or Personal Holidays, or Company Holidays, if applicable. You must use time accrued to cover the waiting period.

After the waiting period, Short-Term Disability benefits may continue up to 25 weeks. The amount of your Short-Term Disability benefit is determined as follows:

- For each complete year of service (including past service credit*) you are eligible for one week of Short-Term Disability benefits at 100% of your weekly pay. For Liberty Mutual employees, past service credit is defined as the length of service credited to regular full-time and regular part-time employees who have had prior service with the Company. Weekly pay is defined as:
  - For full-time non-sales employees, weekly pay is defined as $1/52^{nd}$ of your base rate of annual salary at the time you became disabled.
  - For full-time sales employees, weekly pay is defined as $1/52^{nd}$ of your base rate of annual salary at the time you became disabled plus $1/52^{nd}$ of sales bonuses and/or commissions paid to you in the most recent 12-month period at the time you became disabled.
  - For part-time non-sales employees, weekly pay is defined as 20 hours times your hourly rate at the time you became disabled.
  - For part-time sales employees, weekly pay is defined as 20 hours times your hourly rate at the time you became disabled plus $1/52^{nd}$ of sales bonuses and/or commissions paid to you in the most recent 12-month period at the time you became disabled.

- Then, for each additional week of Short-Term Disability, you will receive 66-2/3% of your weekly pay.

*Note: Generally only service with your employer during the period your employer is part of the Liberty Mutual Group counts for determining years of service for purposes of benefit calculation. In some cases, however, service with your employer prior to its entry into the Liberty Mutual Group or service with a previous employer, may be counted (the following employees are collectively referred to as the "Transferred Employees" in the Pre-Existing Condition Exclusion section of this Plan):

- Former CIGNA Bond Services employees who were employed as of January 24, 1994 receive credit for prior employment service with ICNA.

- Former CUMIS General Insurance Co. employees who were employed as of July 1, 1998 receive credit for prior employment service with CUNA Mutual Insurance Co.

- Golden Eagle Insurance Corporation employees who were employed as of October 1, 1997 receive credit for prior employment service with Golden Eagle Insurance Co.

- Liberty Real Estate Management, Inc. employees who were employed on January 1, 1997, receive credit for prior employment service with Liberty Real Estate Group, Inc. and Liberty Sanibel II Limited Partnership.

1/2001

- WorkWell Health & Safety, Inc. employees (WorkWell, formerly doing business as Systems and Software Group (SSG) Inc.) who were employed as of the acquisition date of March 1, 1997 receive credit for prior employment service with WorkWell/SSG from the later of May 1, 1991 or the employee's date of hire.
- Wausau Service Corporation and former Nationwide Trial Division employees who were employed as of the acquisition date of December 31, 1998 receive credit for prior employment service with Wausau Service Corporation of Nationwide Trial Division.
- Atlantic Health Group employees who were employed as of March 31, 1997 receive credit for prior employment service with New England Health Group from the later of January 2, 1996 or the employee's date of hire.
- ACE employees who were employed as of January 1, 2000 receive credit for prior continuous service from their last full-time hire date with CIGNA (if they transferred from CIGNA to ACE on July 2, 1999) or from their last full time hire date with ACE (if hired by ACE after July 2, 1999).
- ALM employees who were employed as of November 22, 1999 receive credit for prior employment service with ALM.
- American Ambassador employees who were employed as of September 13, 1999 receive credit for prior employment service with American Ambassador.
- Employees of Liberty Energy Corporation who transferred to Liberty Mutual on July 3, 2000 receive credit for prior employment service with Liberty Financial Services.
- Employees and former employees of Colorado Casualty Insurance Company, Liberty Insurance Holdings, Inc. and its directly and indirectly owned subsidiaries, and Montgomery Mutual Insurance Company (collectively the "RAM Companies") who were employed by a RAM Company or Liberty Mutual as of January 1, 2001 receive credit for employment service with the respective RAM Company.

After 26 weeks of disability (one week of Flexible Time Off/Personal Holidays plus 25 weeks of Short-Term Disability), Long-Term Disability benefits may begin. Refer to D-2, Long-Term Disability, for details.

The following is an overview of the disability plans:

| Week 1 | Weeks 2 - 26 | | After 26 weeks |
|---|---|---|---|
| Waiting Period | Short-Term Disability | | Long-Term Disability |
| Five days (or 20 hours) FTO and/or Personal or Company Holidays used (if available) | One week for each year of service (up to 25): **100% of weekly pay** | Remaining weeks of Short-Term Disability: **66-2/3% of weekly pay** | **50% or 60% of weekly pay** (depending on option you selected) |

**If You Are Disabled Again**

If you return to work and become totally disabled again from the same injury or illness within six months,

1/2001

your recurrent disability will be considered as a continuation of the original disability and no new waiting period will apply. Short-Term Disability benefits will be paid only for the remaining portion of the 25-week disability period. A new Short-Term Disability benefit period begins only if you:

1/2001

(a) have been back to work full-time at least six months and become totally disabled again due to the same injury or illness; or

(b) have returned to work full-time and become disabled due to an unrelated injury or illness.

## How to Claim Your Short-Term Disability Benefits

### Notify Your Supervisor or Manager
You should, if possible, notify your supervisor or manager in advance of a pending Short-Term Disability absence. If the absence is unanticipated, you must notify your supervisor or manager on the first day of disability and at regular intervals thereafter as agreed upon with your supervisor or manager. In either event, your claim for Short-Term Disability benefits and related medical information from your provider must be received by Integrated Disability Management Claims within 8 days from the date of your disability in order for benefits to continue without interruption.

### Call The Toll-Free Disability Claim Telephone Reporting Service
After you have notified your supervisor or manager, and as soon as you know if your illness or injury may last more than seven consecutive calendar days, you must report your disability claim. You may also report a claim up to 2 weeks in advance of a pre-scheduled surgery or treatment. You must report your claim regardless of whether it is work-related or not, including maternity claims.

All Short-Term Disability claims must be reported by calling the Disability Claim Telephone Reporting Service at their toll-free number: **1-800-260-2170.** If you are hearing impaired and have a TDD system, you may elect to call the following AT&T Relay Service number: 1-800-855-2880. A representative will take claim information from you or a family member (if you are not able to call), including your name, Social Security Number and other personal information, office location, supervisor's name, nature of your disability and information about your treating physician and office visits.

This information will be sent to the Integrated Disability Management Claims department for review. Your physician will be contacted by a Managed Disability Services Nurse or Integrated Disability Management Case Manager to obtain enough medical information to determine your eligibility for Short-Term Disability benefits. It is important that your attending physician provide the information requested by Integrated Disability Management Claims, including, but not limited to: your diagnosis; treatment program; dates of treatment; if applicable, the type of surgery and date performed and an estimated return to work date. This information should be provided to Integrated Disability Management Claims as soon as possible so that your benefit checks are not delayed. Any additional information needed from you will be requested by Integrated Disability Management Claims.

In order for your physician to provide this medical information to Integrated Disability Management Claims, you will need to sign a release. This is on the Disability Claim Telephone Reporting Service *Wallet Card* (BEN 44), which is available within the "Forms" section of the Employee Resource Center or H.O. Boston Benefits. You should keep the card with you and take the card to your office visit with your attending physician. Copy the release and sign and date it when you first meet with your doctor regarding your disability.

Failure of your physician to provide the requested medical information could result in the denial of your claim.

1/2001

Integrated Disability Management Claims will complete the review of your Short-Term Disability claim and, if approved, authorize your Short-Term Disability benefits, if appropriate. Short-Term Disability benefit payments will be sent to you biweekly from H.O. Dover Payroll instead of your regular paychecks for up to 25 weeks, as long as you are determined to be totally disabled.

1/2001

**Return to Work Status**

It is important to update your supervisor or manager regarding your return to work status at regular intervals during your recovery. Your supervisor or manager may also contact you for this information if they do not hear from you. You or your physician may also periodically be contacted by an Integrated Disability Management Claims representative for this information.

Your supervisor or manager, and the Integrated Disability Management Claims representative handling your Short-Term Disability claim all need to know when your restrictions and/or limitations no longer totally disable you from your job. If you are authorized to return to work by your physician with restrictions and/or limitations, your physician will provide you and Integrated Disability Management Claims with this information. Integrated Disability Management Claims will share limited information about your restrictions and/or limitations with your supervisor or manager so that your accommodation needs may be addressed.

## Your Responsibilities While On Disability Leave

You are expected to promptly report your claim to the Disability Claim Telephone Reporting Service and are expected to cooperate in the review of your claim. Benefits may be delayed if your claim is not reported as soon as you think you are going to be out more than seven consecutive calendar days. Benefits may be forfeited if your claim is not reported within thirty days from your initial date of disability. If it is not reasonably possible for you or a family member to file your claim within this 30-day period, you may still be eligible to receive benefits provided your claim is reported as soon as possible from your initial date of disability. However, unless delayed by your legal incapacity, your claim must be reported within 90 days after your initial date of disability or your benefits will be forfeited.

Also, if requested by Integrated Disability Management Claims, you are expected to follow through with your physician for treatments, to provide any medical information, and to complete any additional claim forms. You or your physician's failure to provide documentation, which in the judgment of Integrated Disability Management Claims supports a disability leave or is necessary to administer benefits, may result in loss of benefits, denial of your claim and your removal from disability status. This medical documentation must be submitted to Integrated Disability Management Claims within 15 days from your initial date of disability or 10 days from the date of request by Integrated Disability Management Claims. If you are removed from disability status, continued absence from your job may be unauthorized and cause for termination of employment.

**Independent Medical Examinations**

Integrated Disability Management Claims has the right to have you examined by a physician as often as it deems reasonably necessary. Liberty is not responsible for transportation charges incurred in the event Liberty requests an independent medical examination. Failure to appear for an independent medical examination may result in benefits ceasing until a rescheduled independent medical examination is completed and may result in your being charged for the cost of the missed examination.

## Right to Disclosure

By reporting a Short-Term Disability claim, you agree to the release of information from your physician or other licensed health care providers, medical facility, government agency, insurance company, HMO, Plan Sponsor/Administrator, or employer regarding diagnosis, treatment and prognosis of your physical or mental condition and/or treatment, as well as any non-medical information about you to the Plan Sponsor, the particular Company in the Liberty Mutual Group to which you are submitting a claim and its insurers, its

1/2001

legal representatives or other persons or organizations providing claims management services  to the Plan and to those representatives of the Plan Sponsor who have a business use for such information.

1/2001

This confidential information will be used by the Company or Plan Sponsor as one factor to determine your eligibility for Short-Term Disability benefits. Any information obtained will not be released by the Company to any person or organization except to the Plan Sponsor, other companies in the Liberty Mutual Group of companies to whom you submit a claim and their insurers, their legal representatives or other persons or organizations providing claims management services to the Plan, those representatives of Liberty Mutual who have a business use for such information and those to whom there is a legal obligation to provide the information. The clinical information, in combination with the physical and interpersonal/cognitive factors of your job and the contractual provisions under which you are covered, will be used to establish the most appropriate work absence duration.

## Leave of Absence

Your Short-Term Disability coverage will continue automatically during any approved leave of absence. If you do not return to work on your scheduled return date, your coverage will be terminated.

### Family/Medical Leave of Absence
Eligible employees can choose to take Family/Medical Leave after Short-Term Disability benefits end, provided that the Short-Term Disability period does not exceed 13 weeks. The Short-Term Disability period will be counted as Family/Medical Leave. Family/Medical Leave, not covered by the Short-Term Disability Plan, is unpaid time off. For important information on Family/Medical Leave of Absence, see Section 5.

## Your Other Benefits While Disabled

Your other payday deductions such as medical, dental, vision care, life insurance, Thrift-Incentive Plan (TIP), auto/homeowners' insurance, etc. will be deducted from your Short-Term Disability benefit payments in the same manner as they are from your regular paycheck. If your Short-Term Disability benefits are insufficient to cover the insurance deductions, there are two payment options:

- If your disability is less than 30 days, your payday deductions will be deducted from your first paycheck after you return to work.

- If your disability lasts over 30 days, you may be billed by H.O. Dover Payroll. Failure to make timely payments will result in loss of coverage.

## Special Statutory Disability Benefits

Eligible employees in California, Hawaii, New Jersey, New York, and Puerto Rico receive their special statutory disability benefit payments as part of the Plan's benefit. Eligible employees in Rhode Island receive statutory disability benefits under the state T.D.I. Fund. Remember: Short-Term Disability benefits under this Plan are reduced by the amount of any statutory benefits you are eligible to receive.

## Coordination of Benefits

Short-Term Disability benefits are reduced by the amount of any of the following benefits you are eligible to receive: workers' compensation, Social Security (including benefits for your spouse and children on account of your disability), special statutory disability benefits, no-fault benefits, or any group insurance plan benefits.

1/2001

If you are eligible, you are expected to apply for these benefits. Receipt of such benefits will not extend Short-Term Disability benefits beyond the limits set within this plan.

## Subrogation and Reimbursement

If your injury appears to be someone else's fault, benefits otherwise payable under the Short-Term Disability Plan for loss of time as a result of that injury will not be paid unless you or your legal representative agree:

- to repay Liberty Mutual Insurance Company ("Liberty Mutual") for such benefits to the extent that they are for losses for which compensation is paid to you by or on behalf of the person at fault;

- to allow Liberty Mutual a lien on such compensation and to hold such compensation in trust for Liberty Mutual; and

- to execute and give to Liberty Mutual any instruments needed to secure the rights set forth above.

Further, when Short-Term Disability benefits have been paid on your behalf, Liberty Mutual will be subrogated to all rights of recovery that you have against the person at fault. These subrogation rights will extend only to recovery of the amount Liberty Mutual has paid. You must execute and deliver any instruments needed and do whatever else is necessary to secure those rights to Liberty Mutual.

## Benefit Overpayment

In the event that you receive Short-Term Disability benefits in excess of the amount to which you are entitled under the plan provisions, you will be expected to reimburse the Plan Sponsor for the amount of any overpayment. The Plan Sponsor has the right to recover such overpayment from you, including the right to reduce future disability benefits, if any.

## Pre-Existing Condition Exclusion

A pre-existing condition is a condition resulting from injury or sickness for which an employee has received treatment or incurred expense within the 12-month period immediately preceding the employee's most recent date of hire*. The plan will pay benefits for days of absence caused by a pre-existing condition only if the date of disability occurs on or after the 12 month anniversary of the employee's most recent date of hire. However, the pre-existing condition exclusion will not be applied to pregnancy disability claims which arise, or for which benefits are payable, on or after January 1, 1998.

*For purposes of determining past service credit, the previous list of Transferred Employees are granted credit for their prior employment service as set forth therein for purposes of satisfying the pre-existing condition exclusion under the Plan.

## Limitations on Benefits

- Benefits will be forfeited if your claim for disability benefits is not reported within the 90-day period following your initial date of disability, unless delayed by your legal incapacity.

1/2001

- Benefits will be forfeited or delayed if you are not being continuously treated by a fully licensed physician.

- Benefits are not payable for disability due to any act of declared or undeclared war, intentionally self-inflicted injury or active participation in a riot.

- Benefits are not payable if the disability is sustained while committing or attempting to commit a felony or any type of assault or battery.

- Benefits for post-pregnancy disability are generally limited as follows: benefits are payable only for six weeks from the date of a normal delivery and eight weeks from the date of a cesarean section, precluding any complications. (Keep in mind that the first five work days of your disability will be covered by FTO/Personal Holidays, if available.) If complications arise which would extend the disability beyond the usual benefit period, medical evidence supporting that disability must be submitted.

- No benefit is payable for any portion of a period of disability due to mental or emotional disorder, alcoholism, or drug addiction unless you are engaged in a corrective program under the continuous guidance of a licensed physician.

- No benefit is payable for disability due to elective cosmetic surgery.

- If you are in an active disability claim status on the date a benefit improvement in the duration or amount of benefits would otherwise become effective, the benefit improvement will not be effective until you return to work on a full-time or regular part-time basis.

- Merit increases and/or service anniversaries that were scheduled to occur during the Short-Term Disability, including the waiting period, do not apply towards the calculation of Short-Term Disability benefits.

## When Coverage Terminates

Your coverage terminates when you cease to be employed by the Plan Sponsor. Pay received in lieu of accrued Flexible Time Off/Personal Holidays will not extend your employment or coverage. Coverage also ceases when an employee changes to a different class of employment not eligible for this coverage (e.g., change to part-time status scheduled and regularly working less than 20 hours per week).

## Administration of the Plan

### Authority of Plan Administrator

The Plan Administrator has the authority, in its sole discretion, to construe the terms of this Plan and decide all questions of eligibility, determine the amount, time and manner of payment of any benefits and decide any other matters relating to the administration or operation of the Plan. Any such interpretations or decisions of the Plan Administrator shall be conclusive and binding.

### Claims and Appeals Procedure

If your claim for a benefit is denied, in whole or in part, Integrated Disability Management  Claims will provide you with a comprehensible notice setting forth:

1/2001

(a)    the specific reason or reasons for the denial;

(b)    specific reference to pertinent Plan provisions on which the denial is based;

(c)    a description of any additional material or information necessary for you to submit to perfect your claim and an explanation of why such material or information is necessary; and

(d)    a description of the Plan's claim review procedure and the fact that the review procedure is available upon your written request to Integrated Disability Management Claims within 60 days after you receive written notice of the denial of the claim, and includes the right to examine pertinent documents and submit issues and comments in writing to Integrated Disability Management Claims.

Such written notice will be given within 90 days after the claim is received by Integrated Disability Management Claims (or within 180 days, if special circumstances require an extension of time for processing the claim, and if written notice of such extension and circumstances is given to the claimant within the initial 90-day period). If such notification is not given within such period, the claim will be considered denied as of the first day of such period and you may request a review of your claim. If you disagree with a decision to deny the payment of any benefits, in whole or in part, you should submit your claim, in writing, to Integrated Disability Management Claims. The Plan Administrator, or its designee, will make the decision on review within 60 days after receipt of the request for review, unless circumstances warrant an extension of time not to exceed an additional 60 days (and unless written notice of such extension and circumstances is given to the claimant within the initial 60-day period). The decision on review shall be in writing and drafted in a manner calculated to be understood by the claimant, and include specific reasons for the decision with references to the specific Plan provisions on which the decision is based.

## Legal Proceedings

You or your authorized representative cannot start any legal action until:

- the date on which your appeals rights have been exhausted; nor

- more than one year after the time proof of claim is required.

Legal actions are contingent upon first having followed the Claims and Appeals procedure outlined above.

## Amendment/Termination

The Plan may be amended, modified, or terminated at any time by the Board of Directors of Liberty Mutual Insurance Company, a committee thereof, or a delegee of either. The Board of Directors has delegated the Chief Executive Officer of Liberty Mutual Insurance Company the authority to make any plan amendment required to bring the Plan into conformity with law or regulation.

## General Provisions

This Short-Term Disability Plan is effective January 1, 1992. If your injury or illness occurred before January 1, 1992, and you have not returned to work, this plan will not apply until you return to full-time employment. The plan that was in effect on the date of your disability applies to you.

1/2001

The employer identification number assigned by the Internal Revenue Service to Liberty Mutual Insurance Company is 04-1543470. The Plan number assigned by Liberty Mutual Insurance Company in accordance with instructions of the Internal Revenue Service is 510. Plan records are maintained by H.O. Boston Benefits on a calendar basis: January 1st through December 31st.

The Plan offers participation to employees of Liberty Mutual Insurance Company, 175 Berkeley Street, Boston, Massachusetts 02117. The Plan also offers participation to employees of certain United States subsidiaries of Liberty Mutual Insurance Company. A list of participating subsidiaries is available on request.

The Short-Term Disability Plan is unfunded and self-insured by Liberty Mutual Insurance Group, 175 Berkeley Street, Boston, Massachusetts 02117. Benefits are paid from the general assets of the Plan Sponsor.

1/2001

For purposes of ERISA, Liberty Mutual is the Plan Administrator. Your rights under ERISA are described in Section A (Benefits Summary) of this Handbook. The Plan is directed by H.O. Boston Benefits. Helen E. R. Sayles is designated as agent for service of legal process. Process may be served on her at 175 Berkeley Street, Boston, Massachusetts 02117. Process may also be served upon the Plan Administrator.

# EXHIBIT 3

Claim - Detail

| Find | Clear | Save | New | Delete | Last Modified | Print | Help | Convert | Reop |

Add Manual Pmt  Add Note  Add Vendor Pmt  Appeal  Assc Claims  Assign Bens  Check  Clm History  Clm Summan  Coversheet
Dis To Date  Eligibility  Employee  Liens  Linked Prov  Manual Pmt  MDS Info  Medical  Note  Note Rpt  Overflow  OverPmts  Refund
Scheduled Pmt  SSDI  Tasks  Task Print  Task Rpt  UnderPmts  Vendor Pmt

**Employee**

| First Name | KEVIN | MI | W |
| Last Name | TOBIN | | |
| SSN | 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 | DOB | 09/26/1945 |

**Customer**

| Name | LIBERTY MUTUAL INSURANCE CO. |
| Sub Name | PERSONAL MKTS SALES & SERV |
| Loc Name | HINGHAM/PERSONAL SALES-REPS |

* Claim Number  1206836     Enable Save ☐   Correspondence

**Class Benefit**

| Funding | ASO | Banking | N | M/N Limit | | Subro Ind | ☑ | Submission | XPRS |
| Employer % | 0.0 | Calcs | Y | Non-verifiable Limit | | Service Type | REG | Diagnosis Release | ☑ |

**Claim** | Medical Info

**Related Dates**

| * Claim Received Date | 01/23/2004 |
| * Last Work Date | 01/10/2001 |
| * Disability Date | 01/11/2001 |
| Accident Date | 01/10/2001 |
| Benefit Begin Date | 01/18/2001 |
| Maximum Benefit Date | 07/11/2001 |
| Approved Thru Date | |
| * Comp Claim Date | 01/27/2004 |
| Determination Date | 01/27/2004 |

**Status**

| * Product | STD |
| * Claim Status | Denied |
| Pended Reason | |
| Closed Date | 01/11/2001 |
| * Close Reason | Contractual Denial/Other |
| Reopen Date | |
| Reopen Reason | |
| Sick Days Left | 0 |

**Salary**

| * Amount | $ 1.00 |
| YTD Wages $ | 0.00 |

**WC Info**

| * Work Related | Y |
| * WC Claim Status | Pe |

**Rehabilitation**

Eligible for   Parti

**Disability**

| * Type | WC - Injury |
| Type Eff. Date | 01/18/2001 |
| Benefit Integ Type | |
| * Occ Disab Type | Own | Estimated Chg Date | |

**SSDI**

| Vendor | |
| Status | |
| Emp ID | |

**Manager Approval**

Ready for Approval

* Assign To   WF

# EXHIBIT 4

# FRISOLI AND FRISOLI
## ATTORNEYS AT LAW

797 CAMBRIDGE STREET
CAMBRIDGE, MASSACHUSETTS 02141

(617) 354-2220 Telephone
(617) 354-6939 Facsimile

FRANK J. FRISOLI, P.C.
LAWRENCE W. FRISOLI, P.C.

WENDY R. STANDER

HOME OFFICE APPEALS

MAY 2 4 2005

May 20, 2005

Dawn-Elynn Tillinghast
Appeal Review Consultant
Liberty Mutual
Disability Claims/Employee Claims Unit
PO BOX 1525
Dover, NH  03821-1525

RE:   Kevin Tobin
      Short Term Disability Benefits
      Claim # 1206836

Dear Ms. Tillinghast:

I am in receipt of your letter dated May 18, 2005.  I am once against writing to you on behalf of my client, Kevin W. Tobin, who is a former employee of Liberty Mutual and a participant in Liberty Mutual's disability program.  In accordance with Sections 104 and 503 of the Employee Retirement Income Security Act of 1974 (ERISA), I hereby request:

1.   Each governing plan document of the disability plan (e.g. trust agreements, disability plan, contracts and other instruments under which the plan was established and operated) in effect at any time since January 2000 and all amendments thereto.

2.   Each summary plan description of the disability plan in effect at any time since January 2000 and all statements of material modification.

3.   Documents which pertain to my client's pension eligibility including correspondence, memoranda and minutes of meetings.



MAY 2 3 200

Dawn-Elynn Tillinghast
May 20, 2005
Page two



HOME OFFICE APPL,

MAY 2 4 2005

4.    A current statement of my client's benefits under the disability plan
      and documents indicating any benefit actually received by my client.

5.    The most recent Form 5500 filed by the disability plan, together with
      all schedules and attachment hereto.

      I am sure that you are aware that under Sections 502(c) of ERISA,
**any administrator** who fails or refuses to comply with a request for
information which is required by the law within 30 days after such request
is made may be personally liable for up to $110 a day from the date of such
failure or refusal.

      Your response to my initial request suggested that the request
should be directed to some other party.  Your response failed to provide me
with the identity and address of the other party.  Your response
acknowledged that you work for the administrator.  I believe my request was
properly directed and your response was inappropriate.

      After receipt of the documents and information requested,
reimbursement of all lawful copying charges will be made.

Very truly yours,



Frank J. Frisoli, Esq.

FJF:mb

**EXHIBIT 5**



Liberty Life Assurance Company of Boston
Disability Claims
Employee Claims Unit
P.O. Box 1525
Dover, NH 03821-1525
Phone No.: (800) 210-0268
Secure Fax No.: (603) 743-4794

June 2, 2005

Frisoli and Frisoli, Attorneys at Law
Attn: Frank J. Frisoli
797 Cambridge Street
Cambridge, MA 02141-0000

RE:    Kevin Tobin
       Short Term Disability Benefits
       Liberty Mutual Insurance Co.
       Claim #: 1206836

Dear Attorney Frisoli:

We are in receipt of your May 20, 2005 letter received in our office on May 24, 2005.

As this plan is self-funded, Liberty Life Assurance Company of Boston provides claims management on an administrative service only basis. As such, please contact Mr. Tobin's Plan Administrator for a copy of his Short Term Disability benefits plan and the other documentation, which you have requested. The Plan Administrator contact information is as follows:

Liberty Mutual Insurance Company
Attn: Benefits Department
175 Berkeley Street
Boston, MA 02117

Please be advised the Mr. Tobin's Short Term Disability claim #1206836 was denied and no benefits were paid.

Sincerely,

Dawn-Elynn Tillinghast
Appeal Review Consultant
Phone No.: (800) 210-0268 Ext. 38933
Secure Fax No.: (603) 743-4794

# EXHIBIT 6

# FRISOLI AND FRISOLI
## ATTORNEYS AT LAW

797 CAMBRIDGE STREET
CAMBRIDGE, MASSACHUSETTS 02141

(617) 354-2220 Telephone
(617) 354-6939 Facsimile

FRANK J. FRISOLI, P.C.
LAWRENCE W. FRISOLI, P.C.

WENDY R. STANDER

June 6, 2005

Liberty Mutual Insurance Company
Attn: Benefits Department
175 Berkley Street
Boston, MA 02117

Re:     Kevin Tobin
        Claim No. 1206836

Please be advised that I represent Kevin W. Tobin, who is a former employee of Liberty Mutual and a participant in Liberty Mutual's disability program. In accordance with Sections 104 and 503 of the Employee Retirement Income Security Act of 1974 (ERISA), I hereby request:

1.  Each governing plan document of the disability plan (e.g. trust agreements, disability plan, contracts and other instruments under which the plan was established and operated) in effect at any time since January 2000 and all amendments thereto.

2.  Each summary plan description of the disability plan in effect at any time since January 2000 and all statements of material modification.

3.  Documents which pertain to my client's pension eligibility including correspondence, memoranda and minutes of meetings.

4.  A current statement of my client's benefits under the disability plan and documents indicating any benefit actually received by my client.

5.  The most recent Form 5500 filed by the disability plan, together with all schedules and attachment hereto.

Liberty Mutual Insurance Company
June 6, 2005
Page two


       After receipt of the documents and information requested, reimbursement of all lawful copying charges will be made.

Very truly yours,


Frank J. Frisoli, Esq.

FJF:mb

# EXHIBIT 7

**Liberty Mutual.**

Liberty Mutual Group

Benefits Department
175 Berkeley Street
Mail Stop 01F
Boston, MA 02116
617-357-9500
617-574-5527 Fax

BY UPS NEXT DAY DELIVERY

July 1, 2005

Frank J. Frisoli
Frisoli and Frisoli
797 Cambridge Street
Cambridge, Massachusetts 024141

Re: Kevin Tobin

Dear Mr. Frisoli,

This letter responds to your correspondence dated June 6, 2005, in which you request documents under ERISA on behalf of your client Kevin Tobin. While we note Mr. Tobin is not a current participant in the Liberty Mutual disability plans, based on currently available information enclosed please find the following documents and information in response to your request:

1.    Plan documents for the Liberty Mutual Short-Term Disability Plan, Liberty Mutual Long-Term Disability Plan, and Group Disability Income Policy since January 2000 and amendments.

2.    Summary Plan Descriptions for the Liberty Mutual Short-Term Disability Plan and Liberty Mutual Long-Term Disability Plan for plan years 2000 through 2005.

3.    You have asked for "Documents which pertain to [your] client's pension eligibility including correspondence, memoranda and minutes of meetings." While we note this request goes beyond what we are required to provide under ERISA, we enclose a copy of the Retirement Plan SPD effective January 1, 2005, as well as correspondence and several benefit calculation statements.

4.    You have asked for "A current statement of [your] client's benefits under the disability plan and documents indicating any benefit actually received by [your] client." Please be advised that ERISA does not require us to prepare such a statement for your client. Also, we note your client already has been provided this information through his receipt of such benefits. Nevertheless we provide the following: Mr. Tobin is not currently receiving disability benefits under the Liberty Mutual Short-Term Disability Plan or Liberty Mutual Long-Term Disability Plan. Mr. Tobin received $499.69 in short-term disability benefits under the Liberty Mutual Short-Term Disability Plan for the period of September 15, 2000, through September 27, 2000.

5.    The most recent Form 5500 with schedules filed by the Liberty Mutual Short-Term Disability Plan and Liberty Mutual Long-Term Disability Plan.

Sincerely,

Sharon Crowley
Customer Service Manager, Benefits