UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KEVIN W. TOBIN,<br><br>       Plaintiff,<br><br>v.<br><br><br>LIBERTY LIFE ASSURANCE<br>COMPANY OF BOSTON and<br>LIBERTY MUTUAL<br>INSURANCE COMPANY,<br><br>       Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)     Civil Action No. 05 CV 11179DPW |

## DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION
## TO THEIR MOTION TO DISMISS

Defendants Liberty Life Assurance Company of Boston ("Liberty Life") and Liberty

Mutual Insurance Company ("Liberty Mutual")(collectively "defendants") submit the following

Reply to the Opposition of plaintiff Kevin W. Tobin ("Tobin") to their Motion to Dismiss to

address some of the mischaracterizations and misapplication of law contained in Tobin's

Opposition Memorandum ("*Opposition*").

**I.      TOBIN'S CLAIMS FOR DISABILITY BENEFITS SHOULD BE DISMISSED AS
UNTIMELY.**

    **A.      <u>Tobin Failed to Administratively Appeal the Denial of Benefits in a Timely
Fashion</u>.**

On January 31, 2001, Tobin's short-term disability claim was formally denied based upon

the fact that Tobin was no longer entitled to disability benefits as a result of his termination by

Liberty Mutual.  <u>See</u> January 31, 2001 letter from Michelle Meserve, Claims Manager, to Kevin

Tobin, attached as Exhibit B to the *Affidavit of Frank Frisoli, Esq.* ("Frisoli Aff.") filed with

Tobin's *Opposition*. In the January 31, 2001 letter, Tobin was specifically informed that any request for a review of that denial must be sent within 60 days of his receipt of that letter. Id. The 60-day limitations period set forth in the letter was expressly set out in both the terms of Liberty Mutual's Short Term Disability Plan (the "Plan") and the Summary Plan Description for the Liberty Mutual Short Term Disability Plan[1] ("SPD"). See Plan, § 5.1(b)(3), attached as Exhibit 1 to the Affidavit of Richard E. Bowman ("Bowman Aff.") filed with the *Defendants' Motion to Dismiss*; SPD, pp. D-1-13, (Bowman Aff. Ex. 2). In addition to setting forth the 60-day limitations period for any appeals, the SPD also specifically stated that all legal actions "are contingent upon first having followed the Claims and Appeals procedure" in the SPD. SPD, p. D-1-10 (Bowman Aff. Ex. 2). Tobin failed to follow these procedures and his claims for short term disability benefits should be dismissed.

Tobin did not appeal within 60 days of the January 31, 2001 denial of benefits. Indeed, Tobin did not contact Liberty Mutual again regarding his claim for short term disability benefits until he renewed his claim for benefits in January 2004. Numerous courts have held that failure to file an administrative appeal within the Plan's limitations period constitutes a failure to exhaust one's administrative remedies. See, e.g., Terry v. Bayer Corp., 145 F.3d 28, 40 (1st Cir. 1998) (exhaustion of remedies requires that a claimant first follow plan's internal appeal process within limitations period); Gayle v. United Parcel Service, 401 F.3d 222, 226 (4th Cir. 2005) (limitations periods for administrative appeals are to be followed just as ordinary statutes of limitations; a claimant who does not appeal timely has failed to exhaust his administrative remedies); Gallegos v. Mt. Sinai Medical Center, 210 F.3d 803, 808 (7th Cir. 2000)(similar); see

---

[1] The SPD is specifically incorporated by reference into the Plan. See Plan, § 1.3, Appendix B (Bowman Aff., Ex. 1).

also Nance v. Sun Life Ins. Co. of Canada, 294 F.3d 1263, 1270 (10th Cir. 2002)(denial of administrative appeal filed outside of plan's limitations period was reasonable).  The result here should be no different and Tobin's benefit claims should be dismissed.

**B.     Tobin failed to file his legal claim for disability benefits in a timely manner.**

Tobin's failure to file this lawsuit within the limitations period established by the Plan similarly defeats his claims.

**1.     The Plan's one year limitations period is not ambiguous.**

While a claim for plan benefits under ERISA is generally governed by the statute of limitations prescribed for contract actions, the ERISA plan itself may contain a shorter limitations period.  See Alcorn v. Raytheon Co., 175 F. Supp. 2d 117, 121 (D. Mass. 2001); I.V. Services of Am. v. Inn Development & Management Co., 7 F. Supp. 2d 79, 86 (D. Mass. 1998). Liberty Mutual's Short Term Disability Plan specifically established a shorter limitations period: a participant may not start a legal action "more than one year after the time proof of claim is required."  SPD, p. D-1-13 (Bowman Aff., Ex. 2); see also Plan, § 5.3 (Bowman Aff., Ex. 1).

Relying upon Skipper v. Claims Services International, 213 F. Supp. 2d 4 (D. Mass. 2002), Tobin claims that the limitations period in the Plan is ambiguous and should not be enforced.  Tobin's reliance on Skipper is misplaced because the facts in Skipper concerned the cessation of long-term disability ("LTD") payments rather than the denial of an initial claim as is the case here.  In Skipper, the plaintiff had been receiving long-term disability payments from the defendants for seven years when the defendants informed him that his LTD payments were going to be discontinued.  Skipper, 213 F. Supp. 2d at 6.  The plaintiff brought suit to resume payment of the LTD benefits.  Defendants claimed that plaintiff's claims were barred by the limitations

period set forth in the Plan which stated that no lawsuit to recover benefits may be brought "after two years from the time written proof of loss is required to be given." Id. The Court found that in the context of a claim by an individual who had filed a claim years before and who had been receiving payments for a number of years thereafter, the Plan's limitations period was ambiguous and therefore unenforceable.[2]

Unlike the situation in Skipper, there is no ambiguity here. The SPD specifically required Tobin to file his claim no more than 90 days after his date of disability. See SPD, pp. D-1-8, D-1-11 (Bowman Aff., Ex. 2). Then, as stated above, the Plan's limitations period required that any legal claim be brought within one year after the proof of claim was due. Thus, where the claim for disability benefits is based on an initial denial of benefit payments, the Plan's limitations periods are clear. Tobin had 90 days after his date of disability to submit his claim to Liberty Mutual for short term disability benefits and thereafter had one year within which to bring a legal action challenging any denial of his benefit claim. It must be remembered that Tobin's current counsel was the same counsel who filed suit against Liberty Mutual on October 31, 2001, well within the one year limitations period for filing this claim. Tobin simply failed to comply with the Plan's stated limitations periods.

Tobin asserts in both his Amended Complaint (¶¶ 15 - 17, 18 - 22) and his *Opposition* (pp. 2, 10) that he requested to take a short term disability leave in December 2000 and again in

---

[2] Tobin's assertion that the Skipper Court found that the plan's limitation period was "pure gobbledegook," completely mischaracterizes the Court's statement by taking the Court's language wholly out of context. The Court's exact quote was as follows: *"To an ERISA beneficiary who has submitted his "proof of loss," has had his application for benefits approved, and has then been receiving benefits for a period of many years before being cut-off, this language is pure gobbledegook."* Skipper, 213 F. Supp. 2d at *7 (emphasis added). Once the Court's entire statement is read in context, it is clear that the Court was not issuing a blanket denunciation of the limitations language in the plan but was instead addressing the application of the plan's language to the specific factual context before it.

January 2001.[3]  Tobin was given written notice of the denial of his claim for short term disability

benefits no later than his receipt of the January 31, 2001 denial of benefits letter.  Tobin,

however, did not file suit here until June 2005, more than four years after being notified that his

request for benefits was denied and far beyond the Plan's applicable limitations period.

Accordingly, Tobin's claims for disability benefits should be dismissed as untimely.

> **2.      There is no basis to toll the limitations period.**

Tobin's assertion that defendants should be estopped from asserting that "Tobin missed

an internal deadline" based on the alleged misrepresentations of their employees should be

disregarded.  Tobin's argument ignores the inconvenient fact that he did assert a claim for

disability benefits and that claim was denied in writing within three weeks of his termination.

Tobin cannot claim to have "relied" to his detriment upon Kevin Vance's assertion that Tobin

was not entitled to disability benefits because Tobin had been terminated, since Tobin did in fact

apply for and was denied those benefits.  Significantly, there is no allegation that Tobin's failure

to file his administrative appeal within the 60-day limitations period or his failure to file this

lawsuit timely was the result of any misrepresentation by the defendants' employees.

As support for his argument that the limitations period should be tolled, Tobin points to a

March 5, 2001, e-mail from a Liberty Mutual Employment and Employee Relations Manager,

Debra Waldstein (the "Waldstein e-mail")(Frisoli Aff., Ex. A), that Tobin claims demonstrates

that a material misrepresentation regarding the date of his termination (January 11, 2001 as

---

[3]  Tobin's assertion that he submitted his request for disability benefits to his supervisors within 90 days of his date of disability is irrelevant to whether Tobin *filed his legal claim* for disability benefits with a court before the Plan's one year limitations period.  Even assuming that Tobin notified Liberty Mutual of his disability during the 90-day limitation period to report his disability (see Plan, § 5.1(b)(1)), Tobin failed to file this suit within the Plan's one year limitations period.

opposed to January 10, 2001) was made to him by Liberty Mutual's employees. The supposed

significance of this e-mail is that it undermines the contention that at the time he requested to be

placed on short term disability leave, Tobin was no longer a Liberty Mutual employee and

therefore had ceased to be eligible for disability benefits. Even if the Waldstein e-mail revealed a

misrepresentation by the defendants' employees as to the date when Tobin ceased to be eligible

for disability benefits, it would not excuse Tobin's failure to bring his claims in a timely manner.

The Waldstein e-mail (bearing Bates stamp no. LM 03150) was produced to Tobin as part of the

discovery in Tobin I[4] on April 12, 2002. See April 12, 2002 letter from Michael L. Chinitz to

Wendy R. Stander (producing documents bearing Bates stamp numbers LM 00001 - LM 04074),

attached as Exhibit 1 to the Second Affidavit of Richard E. Bowman ("Second Bowman Aff."),

filed herewith. Tobin was therefore on notice of any purported misrepresentation as of the time

the Waldstein e-mail was produced to him. At that time, however, Tobin failed to take any

action regarding the denial of his disability claim and did not take any such action for more than

two years.

## II.    TOBIN'S CLAIMS FOR DISABILITY BENEFITS (COUNT I) AND BREACH OF CONTRACT (COUNT II) ARE BARRED BY *RES JUDICATA*.

### A.    Tobin's Claims Are All Based on the Same Factual Nexus.

In determining whether claims are sufficiently related to warrant the application of *res*

*judicata*, the First Circuit applies a transactional approach, i.e., whether the causes of action arise

from a "common nucleus of operative facts." Mass. School of Law at Andover, Inc. v. Amer.

---

[4] Defendants refer herein to Tobin's initial case brought against his former employer, Tobin v. Liberty Mutual Insurance Co., C.A. No. 01-11979DPW, as "Tobin I". Defendants refer herein to Tobin's claim against Liberty Mutual's supervisory employees, Tobin v. Nadeau, et al, C.A. No. 03 CV 11817DPW as "Tobin II". Defendants refer herein to his claim currently before this Court, Tobin v. Liberty Life, et al., C.A. No. 05 CV 11179DPW, as "Tobin III".

Bar Assoc., 142 F.3d 26, 38 (1st Cir. 1998).  There is no doubt that the facts alleged by Tobin in his complaints in both Tobin II and Tobin III (and to a lesser degree Tobin I) all arise out of the same set of operative facts, namely the circumstances surrounding Tobin's termination and the denial of disability benefits to him.  Compare, Tobin II, ¶¶ 64, 82, 101 - 110, 112 - 113, with Tobin III, ¶¶ 11, 13, 15 - 19, 21 - 22.  Contrary to Tobin's contention in his *Opposition*, his claims do not grow "out of two different events unrelated in time."  Rather, as a review of the Tobin II and Tobin III Complaints demonstrates, Tobin's claims all arise out of precisely the same circumstances and all fall within the same brief timeframe.

Tobin's reliance on Hermann v. Cencom Cable Associates Inc., 999 F.2d 223 (7th Cir. 1993) is misplaced.  In Hermann, the court, refusing to apply *res judicata*, held that summary judgment in favor of the defendant in the plaintiff's first claim for denial of COBRA benefits after his termination did not bar the plaintiff's subsequent discrimination claim based upon conduct occurring before the plaintiff was fired.  The Court found that there was only one fact -- that the plaintiff was terminated -- that was the same in both cases.  The Court then went on to state that there was no suggestion that the different factual patterns in the two cases "are at root the same because, for example, they grew out of some malevolent scheme by the defendant to do in the plaintiff at every turn."  Hermann, 999 F.2d at 227.  By contrast, Tobin's Complaints in Tobin II and Tobin III allege that there was an ongoing conspiratorial scheme to terminate Tobin's employment and prevent him from obtaining disability benefits.  See Tobin II, ¶¶ 35 - 36, 41 - 44, 102 - 109, 112 - 113; Tobin III, ¶¶ 15 - 19, 21 - 22; see also Tobin v. Nadeau (Tobin II), 2004 WL 1922134, *5 (D. Mass. August 30, 2004)(stating that Tobin's general allegations

claimed the Tobin II Defendants conspired to get him fired to prevent him from filing a disability benefits claim).

**B.    Tobin Could Have and Should have Brought His ERISA Claims in Tobin I or Tobin II.**

The doctrine of *res judicata* serves to avoid subjecting parties to the cost of multiple lawsuits, conserve judicial resources, prevent inconsistent decisions and increase the reliance upon judicial decisions. Apparel Art International, Inc. v. Amertex Enters. Ltd., 48 F.3d 576, 583 (1st Cir. 1995); Kale v. Combined Ins. Co. of America, 924 F.2d 1161, 1165 (1st Cir. 1991). As such, *res judicata* precludes a party from relitigating claims that were or *could have been raised* in a prior action. Allen v. McCurry, 449 U.S. 90, 94 (1980); Kale, 924 F.2d at 1165. Here, Tobin could have brought his ERISA claims in either Tobin I or Tobin II but instead engaged in gross claim-splitting in order to try to obtain multiple bites of the proverbial apple. Moreover, Tobin has not even attempted to distinguish any of the numerous cases cited by the defendants in which courts have dismissed later suits where there has been a previous dismissal based on ERISA preemption. See *Defendants' Memorandum of Law in Support of Their Motion to Dismiss*, pp. 9 - 10.

Tobin seeks to excuse his failure to assert his ERISA benefits claim in either Tobin I or Tobin II by claiming that he had not exhausted his administrative remedies until July 19, 2004, when his claim for disability benefits was again denied. *Opposition*, p. 8, 10. As stated above, however, Tobin has never exhausted his administrative remedies. He failed to administratively appeal the denial of his benefits claim within the 60-day limitations period established by the Plan. See Section I.A., supra. Putting aside Tobin's failure to exhaust his administrative

8

remedies, Tobin cannot now rely on his own failure to act on his administrative remedies for over three years following the denial of his claim as the justification for subsequently failing to bring a legal claim in Tobin I or Tobin II based on the denial of benefits.

1.      **Tobin could have brought his ERISA claim in Tobin I.**

Tobin was informed in writing of the denial of his claim for disability benefits on January 31, 2001.  See January 31, 2001 letter from Michelle Meserve, Claims Manager, to Kevin Tobin (Frisoli Aff., Ex. B).  Tobin filed Tobin I in the Massachusetts Superior Court on October 31, 2001.  After Tobin I was removed to federal court, Tobin subsequently amended his Complaint in Tobin I on November 26, 2001 and again on February 6, 2002.  Despite being on notice of the denial of his claim for disability benefits as of January 31, 2001, Tobin never included an ERISA claim for benefits in his original Complaint or in either of his Amended Complaints.  Nor has Tobin ever provided any legitimate justification for his failure to do so.

In an effort to excuse his failure to bring his ERISA claim as part of his claims in Tobin I, Tobin asserts that he did not have the Waldstein e-mail, which he claims establishes that Liberty Mutual's employees made misrepresentations to him regarding his date of discharge, until he obtained the e-mail as part of discovery in Tobin I.  Tobin, however, ignores the fact that the email was produced to him on April 12, 2002 and he provides no explanation whatsoever, for his failure to timely move to again amend his Complaint in Tobin I after having obtained this purportedly critical document -- if indeed it was critical to his understanding of his rights.  See April 12, 2002 letter from Michael L. Chinitz to Wendy R. Stander (Second Bowman Aff., Ex. 1).

**2.     Tobin could have brought his ERISA claim in <u>Tobin II</u>.**

Tobin's failure to bring his ERISA claim for disability benefits as part of his claims in <u>Tobin II</u> presents an even stronger basis for the application of *res judicata* in <u>Tobin III</u>. Liberty Mutual provided Tobin with the Waldstein e-mail more than *sixteen months* before he initially filed his Complaint in <u>Tobin II</u> on August 21, 2003. The <u>Tobin II</u> Defendants' motion to dismiss, which was based on ERISA preemption among other grounds, was filed on October 10, 2003. Oral argument on the <u>Tobin II</u> defendants' motion to dismiss was not held until April 28, 2004 and the Court did not dismiss <u>Tobin II</u> until August 30, 2004.[5] At no time during this period, however, did Tobin seek to amend <u>Tobin II</u>, either to add claims or defendants, to properly assert an ERISA claim for denial of benefits.

**C.     <u>Liberty Mutual is in Privity with its Supervisory Employees</u>.**

Courts have generally held that supervisory employees are in privity with their employers for *res judicata* purposes. <u>See</u>, <u>e.g.</u>, <u>Connaughton v. New England Tel. & Telegraph</u>, 1988 WL 34321, at *3 (D. Mass. March 18, 1988); <u>Talano v. Bonow</u>, 2002 WL 31061198, at *4 (N.D. Ill. September 16, 2002); <u>Fiumara v. Fireman's Fund Ins. Companies</u>, 746 F.2d 87, 92 (1st Cir. 1984); <u>see</u> <u>also</u> <u>Lubrizol Corp. v. Exxon Corp.</u>, 871 F.2d 1279, 1288 (5th Cir. 1989)(recognizing that employer-employee relationships may support a claim preclusion defense regardless of which party to the relationship was sued first). As such, defendant Liberty Mutual is in privity with its supervisory employees, Robert Nadeau, Kevin Vance, and Manina Schwitters, who were the defendants in <u>Tobin II</u>.

Contrary to Tobin's assertions, neither <u>Sterling v. United States of America</u>, 85 F.3d 1225

---

[5] This Court's dismissal of <u>Tobin II</u> on ERISA preemption grounds supports the application of *res judicata* here. <u>See</u> *Defendants' Memorandum of Law in Support of Their Motion to Dismiss*, pp. 9 - 10.

(7th Cir. 1996) nor <u>DeLlano v. Berglund</u>, 183 F.3d 780 (8th Cir. 1999), undermines this privity principle. <u>Sterling</u> and <u>DeLlano</u> address claims brought against government employees in their official capacities, and do not address claims brought against supervisory employees in the private sector. Indeed, the Court in <u>Sterling</u> recognized that its holding regarding the preclusive effects of individual and official capacity suits against government employees was in conflict with the general rule that employees and employers are in privity for purposes of *res judicata*. <u>Sterling</u>, 85 F.3d at 1230, fn. 1.

**D.      Liberty Mutual as Plan Administrator is Entitled to Assert *Res Judicata* as a Defense**.

Tobin, relying on <u>Hurt v. Pullman, Inc.</u>, 764 F.2d 1443 (11th Cir. 1985), argues that the application of *res judicata* as to Liberty Mutual is inappropriate because Tobin is now suing Liberty Mutual in its capacity as Plan Administrator as opposed to its capacity as his former employer as was the case in <u>Tobin I</u>. Tobin's reliance on <u>Hurt</u>, however, is misplaced. The holding in <u>Hurt</u> was based on the Alabama law of *res judicata* as opposed to federal principles of *res judicata*, which are applicable here. <u>See Mass. School of Law</u>, 142 F.3d at 37 (where the potentially precluding suit and the potentially precluded suit were brought in federal court, federal law governs the *res judicata* effect of the prior suit). Unlike federal *res judicata* law, Alabama law does not recognize the doctrine of nonmutual claim preclusion and therefore <u>Hurt</u> is inapposite.

It has long been recognized under federal principles of *res judicata* that the doctrine of nonmutual claim preclusion allows a non-party to a prior action to assert *res judicata* as a defense to a later action if the new defendant has a close and significant relationship with the

original defendant.  See, e.g., Andrews-Clarke v. Lucent Technologies, Inc., 157 F. Supp. 2d 93,

101 (D. Mass. 2001) citing In re El San Juan Hotel Corp., 841 F.2d 6, 10 (1st Cir. 1988);

Connaughton, 1988 WL 34321, *4; Fiumura, 746 F.2d at 92; Lubrizol, 871 F.2d at 1288-1289.

There can be no dispute that Liberty Mutual, regardless of its capacity, has a close and significant

relationship with the defendant in Tobin I, itself.  Similarly, the close and significant relationship

of Liberty Mutual with the Tobin II Defendants, who were all supervisory employees at Liberty

Mutual, cannot be disputed.  This is particularly true where, as here, the Complaints in both

Tobin II and Tobin III are replete with allegations regarding the actions of the Tobin II

Defendants which form the basis of Tobin's claims.  See Lubrizol, 871 F.2d at 1288-1289

(application of nonmutual claim preclusion justified where the actions of the employee-

defendants in second suit formed the basis of the claims against the employer-defendant in the

first suit).  As such, Liberty Mutual is entitled to assert a defense against Tobin's current claims

based on res judicata.  See also Defendants' Memorandum of Law in Support of Their Motion to

Dismiss, pp. 6 - 10.

**III.    TOBIN'S CONTRACT CLAIM (COUNT II) IS PREEMPTED BY ERISA.**

ERISA applies to any "employee benefit plan" established or maintained by an employer

to provide its "participants or their beneficiaries, through the purchase of insurance or otherwise

... benefits in the event of sickness, accident, [or] disability." 29 U.S.C. §§ 1002 - 1003;

29 U.S.C. § 1002.  The stated purpose of Liberty Mutual's Short Term Disability Plan is to

provide its participants with short term disability benefits.  There is no doubt that Tobin's claim

for benefits under Liberty Mutual's Short Term Disability Plan is governed by ERISA.  As such,

and as Tobin acknowledges (*Opposition*, p. 11), this claim should be dismissed on the basis of

ERISA preemption. See, e.g., Cogan v. Phoenix Life Ins. Co., 310 F. 3d 238, 242 (1st Cir.

2002)(breach of contract claim preempted by ERISA); Harris v. Harvard Pilgrim Health Care,

Inc., 208 F.3d 274, 281 (1st Cir. 2000)(same).

## IV.    **TOBIN WAS PROVIDED WITH PLAN DOCUMENTS IN A TIMELY MANNER**.

Only a Plan Administrator is subject to liability under 29 U.S.C. § 1132(c) for failing to

provide a Plan participant with certain Plan documents within 30 days of the participants' request

to the Plan Administrator for such documents. See Kobold v. AETNA U.S. Healthcare, 258 F.

Supp. 2d 1317, 1324 (M.D. Fla. 2003); Vanderklok v. Provident Life and Accident Ins., Co., 956

F.2d 610, 618 (6th Cir. 1992). Here, Tobin did not request Plan documents from the *Plan*

*Administrator*, Liberty Mutual, until June 6, 2005.[6] See June 6, 2005 letter from Frank J. Frisoli

to Liberty Mutual Insurance Company, Attn: Benefits Department (Bowman Aff., Ex. 6).

Liberty Mutual was not required to provide Tobin with Plan documents pursuant to his request

until July 6, 2005. Liberty Mutual complied with ERISA by providing Tobin with certain Plan

documents on July 1, 2005. See July 1, 2005 letter from Sharon Crowley to Frank J. Frisoli

(Bowman Aff., Ex. 7; Frisoli Aff., Ex. E) )(listing the documents provided to Tobin in response

to his request for Plan documents). Since Liberty Mutual, as Plan Administrator, provided Tobin

with Plan documents within 30 days of Tobin's written request to them, Tobin's claim for failure

to provide Plan documents should be dismissed.

---

[6] Tobin acknowledges in his *Opposition* that he filed his Complaint on June 7, 2005, a mere one day after he made his written request to Liberty Mutual for Plan documents. *Opposition*, p. 16. Nowhere in his *Opposition*, however, does Tobin explain why he went forward with this suit for failure to provide Plan documents when Liberty Mutual had 30 days after it received his written request within which to produce certain Plan documents. Tobin's conduct, in requesting the documents from Liberty Mutual after having been informed by Liberty Life that his initial requests had been misdirected, indicates that he was aware that Liberty Mutual was the proper entity to whom the request should have been made. Tobin had no justification to bring a claim against Liberty Mutual before the 30-day statutory deadline within which Liberty Mutual had to provide documents elapsed.

Despite Tobin's assertion that Liberty Mutual failed to provide him with "all of the requested documentation" he sought, Liberty Mutual, as Plan Administrator, was only obligated to provide Tobin with certain Plan documents upon request. See 29 U.S.C. §§ 1021(a), 1024(b)(4), 1025(a). Tobin's June 6, 2005 request for documents included requests for documents that exceeded the scope of Liberty Mutual's required production. Notwithstanding the overbreadth of Tobin's requests, Liberty Mutual produced all of the requested documents which it was required to produce and also produced additional documents that were responsive to Tobin's other requests despite being under no obligation to do so. See July 1, 2005 letter from Sharon Crowley to Frank J. Frisoli (Bowman Aff., Ex. 7; Frisoli Aff., Ex. E)(stating that Liberty Mutual was providing certain documents in response to Tobin's request despite having no obligation to do so).

## V.      <u>LIBERTY LIFE IS NOT A PROPERLY NAMED DEFENDANT</u>.

Only an ERISA plan itself or the plan's fiduciaries are proper defendants in an ERISA action. Terry, 145 F.3d at 35. In the case of Liberty Mutual's Short Term Disability Plan, Liberty Mutual was explicitly named in the Plan as the "Plan Administrator" and as the entity that controls the administration of the Plan. See Plan, §§ 1.3, 7.1-7.2, 7.6 (Bowman Aff., Ex. 1); SPD, p. D-1-15 (Bowman Aff., Ex. 2). Tobin's *Opposition* acknowledges that the 2001 Short Term Disability Plan specifically names Liberty Mutual as the Plan Administrator. *Opposition*, p. 16. Accordingly, only Liberty Mutual, and not Liberty Life, is a proper defendant to Tobin's ERISA claim and the claims against Liberty Life should be dismissed.

Contrary to Tobin's assertion (*Opposition*, p. 16), the 2000 Short Term Disability Plan does specifically name Liberty Mutual as the Plan Administrator. See Summary Plan

14

Description for the 2000 Short Term Disability Plan, pp. D-1-11 (Second Bowman Aff., Ex. 2).

A copy of the Summary Plan Description for the 2000 Short Term Disability Plan (bearing Bates

stamp nos. LM 01594 - LM 01604) was produced by Liberty Mutual to Tobin on April 12, 2002

as part of the discovery in Tobin I.  See April 12, 2002 letter from Michael L. Chinitz to Wendy

R. Stander (Second Bowman Aff., Ex. 1).[7]   Tobin was on notice for over three years before he

filed this lawsuit that Liberty Mutual was the Plan Administrator, and therefore the proper

defendant to any ERISA action.  Tobin's decision to name Liberty Life as a defendant to this

action, despite having been on notice since 2002 as to the true identity of the Plan Administrator,

and his failure to dismiss Liberty Life from this lawsuit, despite knowing that it is not a proper

ERISA defendant, is indicative of the type of vexatious conduct Tobin and his counsel have

engaged in throughout the course of their litigation against Liberty Mutual and its employees in

Tobin I, Tobin II, and, now, Tobin III.

## VI.    SUMMARY JUDGMENT FOR TOBIN IS NOT APPROPRIATE.

Defendants have sought dismissal of Tobin's claims pursuant to Fed. R. Civ. P. 12(b)(6).

In support of their *Motion to Dismiss*, the defendants have relied upon documents that Tobin's

allegations were specifically linked to or depended upon.  Therefore, this Court need not convert

the *Defendants' Motion to Dismiss* to one for summary judgment.  See Shaw v. Digital Equip.

Corp., 82 F.3d 1194, 1220 (1st Cir. 1996); Beddall v. State St. Bank & Trust Co., 137 F.3d 12,

17 (1st Cir. 1998).

---

[7] Unfortunately, due to a copying error, when the Summary Plan Description for the 2000 Short Term Disability Plan was again sent to Tobin in July 2005, the last page of the Summary Plan Description for the 2000 Short Term Disability Plan, which identified Liberty Mutual as the Plan administrator, was inadvertently omitted from the copy sent to Tobin.  The fact that the Summary Plan Description for the 2000 Short Term Disability Plan sent to Tobin in 2005 was missing a single page, however, is immaterial given that the entire Summary Plan Description for the 2000 Short Term Disability Plan was produced to Tobin in April 2002 as part of the discovery in

To the extent that Tobin's *Opposition* appears to request summary judgment on Tobin's behalf, that request should be denied. Despite Tobin's gratuitous and underdeveloped assertion that the "relevant facts in this case are undisputed," *Defendants' Motion to Dismiss* and Tobin's *Opposition* make clear that numerous factual disputes exist rendering summary judgment inappropriate.

WHEREFORE, for the reasons stated above and those set forth in their Motion to Dismiss, defendants respectfully request that this Court allow their motion and dismiss Tobin's Complaint.

Respectfully submitted,

LIBERTY LIFE ASSURANCE
COMPANY OF BOSTON and
LIBERTY MUTUAL
INSURANCE COMPANY,

By their attorneys,

Alan D. Rose (BBO#427280)
Richard E. Bowman (BBO# 645245)
ROSE & ASSOCIATES
29 Commonwealth Avenue
Boston, MA 02116
Tel: 617-536-0040
Fax: 617-536-4400

Date: September 21, 2005

---

Tobin I. Thus, Tobin was on notice for over three years before bringing this lawsuit that Liberty Mutual and not Liberty Life was the Plan Administrator.