UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KEVIN W. TOBIN,<br><br>Plaintiff,<br><br>v.<br><br>LIBERTY LIFE ASSURANCE COMPANY OF BOSTON and LIBERTY MUTUAL INSURANCE COMPANY,<br><br>Defendants. | Civil Action No. 05 CV 11179DPW |

**MEMORANDUM IN SUPPORT OF DEFENDANTS'
MOTION FOR COSTS, FEES AND SANCTIONS
<u>UNDER FED. R. CIV. P. 11 AND 28 U.S.C. §1927</u>**

Plaintiff Kevin W. Tobin and his counsel have pursued an unreasonable and vexatious course of conduct in litigation against Tobin's former employer, defendant Liberty Mutual Insurance Company ("Liberty Mutual"), as is evidenced by now a third lawsuit against Liberty Mutual and/or its agents arising out of the circumstances surrounding Tobin's discharge from Liberty Mutual in January 2001. Pursuant to Fed. R. Civ. P. 11 and 28 U.S.C. §1927, Defendants Liberty Mutual and Liberty Life Assurance Company of Boston ("Liberty Life") submit this Memorandum in support of their motion for the imposition of sanctions against Tobin's counsel, Frisoli and Frisoli, and an award of their reasonable costs and expenses, including attorneys' fees, incurred in defending Tobin's latest claims asserted in <u>Tobin v. Liberty Life, et al.</u>, C.A. No. 05 CV 11179DPW ("<u>Tobin III</u>").

## **FACTUAL BACKGROUND**

A. **Tobin's Initial Lawsuit against Liberty Mutual.**

All of Tobin's allegations essentially arise out of the facts and circumstances surrounding his discharge from Liberty Mutual on January 10, 2001. On October 31, 2001, Tobin brought a lawsuit against Liberty Mutual in the Massachusetts Superior Court alleging age and disability discrimination and/or retaliation under state and federal law, as well as common law claims for "wrongful termination," and breach of the implied covenant of good faith and fair dealing. On November 16, 2001, Liberty Mutual removed Tobin's suit to this Court based on "federal question" grounds. See Tobin v. Liberty Mutual Ins. Co., C.A. No. 01 CV 11979 DPW, 2004 WL 1922133 (D.Mass. August 30, 2004)("Tobin I").

During the course of Tobin I, Tobin was granted leave to amend his Complaint two times.[1] Neither Tobin's First nor Second Amended Complaints in Tobin I contain any of the claims alleged against Liberty Mutual in Tobin III despite the fact that Tobin was aware of the essential facts regarding the circumstances surrounding Liberty Mutual's denial of disability benefits at the time he was litigating Tobin I. See Tobin I, Second Am. Comp., ¶¶ 51 - 56, alleging that Tobin's supervisor gave Tobin positive feedback about his performance and discouraged him from taking a third disability leave prior to his discharge. On October 1, 2003, after extensive discovery, Liberty Mutual moved for summary judgment as to all of the claims in Tobin I.

---

[1] Tobin's First Amended Complaint in Tobin I dropped his claim for age discrimination under M.G.L. c. 149 and replaced it with a claim for breach of the covenant of good faith and fair dealing. All other claims remained the same. Tobin's Second Amended Complaint in Tobin I modified his claim for breach of the covenant of good faith and fair dealing, which improperly relied upon M.G.L. c. 149, § 24A.

**B.    Tobin Sues Liberty Mutual's Supervisory Employees.**

On August 21, 2003, while Tobin I was still pending before this Court and without any notice to Liberty Mutual's counsel, Tobin and Frisoli filed a second lawsuit in the Massachusetts Superior Court naming Liberty Mutual employees, Robert Nadeau ("Nadeau"), Kevin Vance ("Vance"), and Manina Schwitters ("Schwitters") (collectively the "Tobin II defendants"), as defendants. Tobin's second lawsuit, which alleges essentially the same facts and circumstances as alleged in Tobin III, asserted claims for intentional infliction of emotional distress, negligent infliction of emotional distress, and intentional interference with contractual relations. On September 19, 2003, the Tobin II defendants removed the case to this Court based on the Employee Retirement Income Security Act ("ERISA"). See Tobin v. Nadeau, et al., C.A. No. 03 CV 11817 DPW, 2004 WL 1922134 (D.Mass. August 30, 2004)("Tobin II").

Despite having twice amended his complaint in Tobin I, Tobin and Frisoli never sought to amend the complaint in Tobin I at any time to add any of the Tobin II individual defendants to that case, even though many of the same allegations appeared verbatim in both Tobin I and Tobin II. Rather, Tobin and Frisoli waited until the close of discovery in Tobin I to file the Complaint in Tobin II. Over the course of the litigation in Tobin I, Tobin twice moved to amend this Court's Case Management Scheduling Order. This Court granted both of Tobin's motions, setting the final discovery deadline for June 30, 2003 and ordering that "no further requests for enlargement of the schedule will be entertained." Thus, Tobin's filing of Tobin II was clearly an attempt to circumvent this Court's procedural orders in Tobin I and the orderly adjudication of his claims.

On October 10, 2003, the Tobin II defendants moved to dismiss Tobin's claims for failure

to state a claim upon which relief may be granted, primarily on the basis that Tobin's state law claims were preempted by ERISA. Despite having been put on notice that the claims asserted in Tobin II were subject to ERISA preemption, Tobin never sought to amend his Complaint in Tobin II to assert a proper ERISA claim.

   C.   **This Court's Disposition of Tobin I and Tobin II.**

On August 30, 2004, this Court issued its rulings on all of the pending motions in both Tobin I and Tobin II, granting summary judgment on Liberty Mutual's behalf in Tobin I and dismissing all of the claims in Tobin II.

In Tobin I, this Court found that Tobin failed to provide any evidence in support of his age discrimination/retaliation and wrongful termination claims. Tobin I, 2004 WL 1922133, at *5. Similarly, this Court found that Tobin failed to assert any disputed issue of material fact as to Liberty Mutual's assertion that Tobin's consistently poor performance was the basis for his termination and not discrimination. Id. at *8. Finally, this Court found that Tobin had failed to show that any of the accommodations he sought were tied to his disability and therefore Liberty Mutual was entitled to summary judgment on Tobin's failure to accommodate claim. Id. at *10. Tobin appealed the grant of summary judgment in Tobin I. That appeal is currently under advisement in the Court of Appeals, having been argued on April 7, 2005.

In Tobin II, this Court found that all of the state law claims asserted by Tobin fell squarely within ERISA's enforcement provisions. Tobin II, 2004 WL 1922134, at *5. Thus, all of the state law claims were preempted by ERISA and subject to dismissal. Id. Tobin did not appeal the dismissal of his claims in Tobin II.

### D. Tobin Files a Third Lawsuit.

Having failed to extract a monetary judgment from Liberty Mutual (or its agents) on two previous occasions, Tobin and Frisoli now attempt yet a third "bite at the apple." On June 7, 2005, Tobin and Frisoli filed this suit against Liberty Mutual and Liberty Life seeking to recover benefits under Liberty Mutual's Short Term Disability Plan (the "Plan") pursuant to ERISA. Tobin has also alleged a claim for breach of contract, based upon the denial of those benefits, and a claim for an alleged failure to provide him with copies of the Plan documents as required by 29 U.S.C. § 1132(c). On June 14, 2005, Tobin filed his First Amended Complaint "solely to add the exhibits omitted from the original filing." The allegations in Tobin III essentially mirror those in Tobin II. Tobin, however, never moved to amend his Tobin II Complaint to include Liberty Mutual or Liberty Life as defendants or to add an ERISA claim.

### ARGUMENT

### I. SANCTIONS ARE APPROPRIATE BASED ON TOBIN'S AND HIS COUNSEL'S DISREGARD FOR THE ORDERLY PROCESS OF JUSTICE.

By pursuing claims that are contrary to well established precedent, inappropriate based on the attendant facts, or which have essentially been previously disposed of by this Court, Tobin and his counsel have engaged in conduct that clearly warrants sanctions under both Rule 11 and §1927. Indeed, Tobin and his counsel have engaged in a pattern of conduct that has unreasonably and vexatiously multiplied these proceedings. Only the imposition of sanctions by this Court will deter Tobin and his counsel from continuing to harass Liberty Mutual and its agents through litigation.

### A. Federal Rule of Civil Procedure 11

The purpose of Rule 11 is to deter parties from asserting claims or defenses that are

frivolous or brought for an improper purpose. Rule 11 states, in pertinent part, as follows:

> (b) Representations to the Court. By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,--
>
> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
>
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery...

Fed. R. Civ. P. 11.

In determining whether there has been compliance with Rule 11, a court applies an objective standard of "reasonableness under the circumstances." Cruz v. Savage, 896 F.2d 626, 631 (1st Cir. 1990). In order to find a violation of Rule 11, a Court need not find bad faith, and "subjective good faith is not enough to protect an attorney from Rule 11 sanctions." Id. Rather, a violation may be caused by "inexperience, incompetence, willfulness or deliberate choice." Id.

**B.    28 U.S.C. §1927**

Similar to Rule 11, §1927 serves to prevent abuses in the litigation process. The statute provides as follows:

> Any attorney or other person admitted to conduct cases in any court of the United States or any territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be

>required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. §1927.

In the First Circuit, a finding of subjective bad faith is not required for a violation of §1927. Cruz, 896 F.2d at 631-632. Conduct is "'vexatious' when it is harassing or annoying regardless of whether it is intended to be so." Id. at 632. Indeed, counsel need not even intend to harass or annoy or be guilty of conscious impropriety. It is simply enough if an attorney "acts in disregard of whether his conduct constitutes harassment or vexation, thus displaying a serious and studied disregard for the orderly process of justice." Id. (internal citations omitted).

Tobin and Frisoli's conduct have forced Liberty Mutual to defend against three separate law suits. As a practical matter, this has required Liberty Mutual to review its files three times just to prepare to answer or respond to the complaints. The extensive discovery process in Tobin I required Liberty Mutual to further review its files and produce a substantial number of documents. If Tobin II had not been dismissed or if Tobin III proceeds, Liberty Mutual will no doubt again be obligated to produce even more documents. Each of the Tobin II defendants was deposed by Tobin in Tobin I and would have been deposed in Tobin II. Again, if Tobin III proceeds, Tobin will likely try to depose the Tobin II defendants in that case as well. This is precisely the type of vexatious multiplying of proceedings that §1927 was enacted to prevent.

    **C.**     **Each of Tobin's Claims in Tobin III Warrants the Imposition of Sanctions.**

        **1.**     **Tobin's breach of contract claim.**

This Court dismissed all of Tobin's state law claims in Tobin II because those claims were preempted by ERISA. Tobin II, 2004 WL 1922134, *5. In doing so, this Court stated that

7

once it had determined that Tobin's state law claims fell within the provisions of ERISA, it was "virtually automatic[]" that Tobin's claims were preempted by ERISA and dismissal was appropriate. Id. Tobin's breach of contract claim is no different. Indeed, it is black letter law that a breach of contract claim that seeks benefits under an ERISA plan is subject to ERISA preemption and dismissal. See, e.g., Cogan v. Phoenix Life Ins. Co., 310 F. 3d 238, 242 (1st Cir. 2002); Harris v. Harvard Pilgrim Health Care, Inc., 208 F.3d 274, 281 (1st Cir. 2000); Hampers v. W.R. Grace & Co., Inc., 202 F.3d 44, 52 (1st Cir. 2000); McMahon v. Digital Equipment Corp., 162 F.3d 28, 36 (1st Cir. 1998); Turner v. Fallon Comm. Health Plan, Inc., 127 F.3d 196, 199 (1st Cir. 1997). In light of this Court's decision in Tobin II dismissing his state law claims on preemption grounds and the wealth of judicial authority regarding the preemption of contract claims for ERISA plan benefits, it was patently unreasonable for Tobin to have pursued his breach of contract claim in Tobin III. Tobin's continued assertion of a claim that had no plausible legal justification clearly warrants sanctions. See Bolivar v. Pocklington, 975 F.2d 28, 34 (1st Cir. 1992)(sanctions warranted under §1927 where plaintiff persisted in prosecuting meritless claims); Browning v. Kramer, 931 F.2d 340, 346 (5th Cir. 1991)(plaintiff's repetitious assertion of state law claims preempted by ERISA justified sanctions imposed by the Court); Hochen v. Bobst, 198 F.R.D. 11, 18 (D. Mass. 2000)(sanctions imposed where asserted claim was not warranted by existing law); Alexander v. Primerica, 819 F.Supp. 1296, 1310 (D.N.J. 1993)(sanctions warranted where plaintiff asserted a jury claim on an ERISA action despite "clarity of law" that no such right existed).

    2.    **Tobin's claim for "failure to provide Plan".**

Tobin's claim that defendants failed to provide him with a copy of the relevant Plan

documents is completely disingenuous and the actions of Tobin's counsel demonstrate his bad faith and vexatious conduct in asserting this claim.

ERISA plan administrators are required to provide plan participants with copies of certain plan documents within 30 days of receiving a written request for such documents. 29 U.S.C. §1132(c). Only plan "administrators," however, have a duty to provide information under §1132(c). Liberty Mutual is the plan "administrator" of Liberty Mutual's Short-Term Disability Plan. See Liberty Mutual's Short Term Disability Plan (the "Plan"), §§ 1.1, 1.3, 7.1, attached as Exhibit 1 to the Affidavit of Richard E. Bowman ("Bowman Aff."); Summary Plan Description for the Liberty Mutual Short Term Disability Plan ("SPD"), p. D-1-15 (Bowman Aff., Exhibit 2), filed herewith. Thus, any requests for copies of Plan documents must be made in writing to Liberty Mutual. Once a request for Plan documents is made to Liberty Mutual, it has 30 days within which to respond to the request. See 29 U.S.C. § 1132(c). Tobin's counsel did not request Plan documents from Liberty Mutual until June 6, 2005, one day before he filed this action.

On May 13, 2005, Tobin's counsel sent a letter to the "Appeals Review Consultant" at Liberty Life requesting Plan documents. Am. Comp., Ex. D. On May 18, 2005, Liberty Life, which was not the Plan administrator, informed Tobin's counsel that his request for Plan documents was misdirected and that he would need to request those documents from Tobin's benefits administrator at Liberty Mutual. Am. Comp., Ex. E. Then on May 20, 2005, Tobin's counsel again requested Plan documents from the Appeals Review Consultant at Liberty Life.[2]

---

[2] Tobin's counsel, despite having sent letters to Liberty Life at its address at P.O. Box 1525, Dover, New Hampshire 03821-1525 on at least two occasions (see Am. Comp., Ex. B and D) sent his May 20, 2005 request for Plan documents with the name "Liberty Mutual" in the address heading as opposed to Liberty Life even though the letter was sent to the address of Liberty Life.

See May 20, 2005 letter from Frank J. Frisoli to Dawn-Elynn Tillinghast, Appeals Review Consultant (Bowman Aff., Ex. 4). On June 2, 2005, Liberty Life again informed Tobin's counsel that his request for Plan documents had been misdirected, specifically gave him the Plan administrator's contact information, and again informed him he should contact Liberty Mutual to obtain the Plan documents. See June 2, 2005 letter from Dawn-Elynn Tillinghast to Frank J. Frisoli (Bowman Aff., Ex. 5). Finally, on June 6, 2005, Tobin's counsel directed his request for Plan documents to Liberty Mutual. See June 6, 2005 letter from Frank J. Frisoli to Liberty Mutual Insurance Company, Attn: Benefits Department (Bowman Aff., Ex. 6). Upon its receipt of Tobin's request for the Plan documents, Liberty Mutual had 30 days within which to provide those documents to Tobin. In response to the June 6, 2005 request from Tobin's counsel, Liberty Mutual sent Tobin's counsel all of the requested Plan documents to which Tobin was entitled under ERISA on July 1, 2005, twenty-five days after the request. See July 1, 2005 letter from Sharon Crowley to Frank J. Frisoli (Bowman Aff., Ex. 7).

Despite having twice been informed that his initial requests for Plan documents had been misdirected and having only requested Plan documents from the Plan administrator on June 6, 2005, Tobin filed this action alleging a failure to provide Plan documents on June 7, 2005. The June 6, 2005 letter from Tobin's counsel to Liberty Mutual clearly demonstrates that Tobin's counsel was well aware that his prior requests had not been sent to the proper party. For Tobin's counsel to file a §1132(c) claim just <u>one day</u> after making his request to the Plan administrator, knowing full well that the administrator had 30 days within which to comply with his request, is a shocking demonstration of bad faith. The fact that Tobin continues to assert his claim after Liberty Mutual provided the Plan documents to him within 25 days of his request is further

evidence of his bad faith. Tobin's claim is a prime example of the continued misuse of litigation and the courts by Tobin and his counsel in an effort to harass and annoy Liberty Mutual. This is precisely the type of vexatious conduct that §1927 was enacted to prevent. See Cruz, 896 F.2d. at 632 (sanctions warranted where attorney's conduct in multiplying proceedings is unreasonable, harassing and annoying).

### 3. Tobin's claims for ERISA Plan benefits.

Tobin's filing of a claim for payment of disability benefits under ERISA almost one year after the dismissal of similar claims in Tobin II further demonstrates the unreasonableness of the actions engaged in by Tobin and his counsel. Tobin and Frisoli have been aware of the factual basis for his disability benefits claim since filing Tobin I. Compare Tobin I, *Second Am. Comp.*, ¶¶ 51 - 56, with Tobin II, ¶¶ 101 - 110 and Tobin III, ¶¶ 15 - 19, all alleging that Tobin's supervisor, Schwitters, acted to prevent Tobin from taking a third disability leave prior to his discharge. Despite the well established prohibition on claim-splitting, however, Tobin and Frisoli now assert a claim for disability benefits. Indeed, all of the claims asserted by Tobin and Frisoli in each of Tobin's lawsuits have arisen out of the same nucleus of operative facts. Tobin's and Frisoli's assertion of yet another related claim in the face of this Court's dismissal of Tobin II and grant of summary judgment in Tobin I is wholly unreasonable. The conduct of Tobin and Frisoli in asserting not only multiple claims but also multiple lawsuits, which are unsupported in either fact or law, have unreasonably multiplied the proceedings before this Court. By any objective standard, their conduct warrants sanctions by this Court. See, e.g. Cruz, 896 F.2d at 634; Bolivar, 975 F.2d at 34.

## CONCLUSION

For the foregoing reasons, defendants Liberty Mutual and Liberty Life respectfully request that this Court sanction Tobin's counsel for filing and pursuing this action and award defendants their costs and expenses, including attorneys' fees, in defending against this action.

Respectfully submitted,

LIBERTY LIFE ASSURANCE
COMPANY OF BOSTON and
LIBERTY MUTUAL
INSURANCE COMPANY,

By their attorneys,

_____
Alan D. Rose (BBO#427280)
Richard E. Bowman (BBO# 645245)
ROSE & ASSOCIATES
29 Commonwealth Avenue
Boston, MA 02116
Tel: 617-536-0040
Fax: 617-536-4400

Date: August 15, 2005

### CERTIFICATE OF SERVICE

I hereby certify that on this day a true copy of the above document was served upon the attorney of record for each party by mail/by hand.

Date: 8/15/05    _____